Reversed and Remanded and Opinion filed April 3, 2008








Reversed
and Remanded and Opinion filed April 3, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00167-CV

_______________

 

BILL WHITE, MAYOR, CITY OF HOUSTON, 

AND HOUSTON CITY COUNCIL, Appellants

 

V.

 

 

CARROLL G. ROBINSON, BRUCE R. HOTZE, AND JEFFREY N.
DAILY, Appellees

                                                                                                                                               


On Appeal from the 333rd District Court

Harris County, Texas

Trial Court Cause No. 04-72705

                                                                                                                                               


 

O P I N I
O N








Appellees,
Carroll G. Robinson, Bruce R. Hotze, and Jeffrey N. Daily, sued appellants,
Bill White, Mayor of the City of Houston, and Houston City Council
(collectively Athe City@), seeking a declaratory judgment that a citizen-initiated proposition
passed by voters is valid and must be enforced.  The trial court denied the
City=s plea to the jurisdiction and motion
for summary judgment.  The trial court granted appellees= motion for summary judgment and
entered a final judgment.

The City
presents six issues for review.  First, the City contends the trial court had
no authority to consider this suit because appellees were required to pursue an
election contest or quo warranto proceeding.  In its second and third issues,
the City argues the trial court did not have subject matter jurisdiction because
appellees lack standing to assert their claim.  The City=s fourth, fifth, and sixth issues
pertain to the merits of appellees= claim: the City asserts the trial
court erred by denying the City=s motion for summary judgment and granting appellees= motion for summary judgment.  We
conclude the City=s second and third issues are dispositive because appellees
have failed to establish standing.  However, appellees must be afforded a
reasonable opportunity to amend their pleadings and cure the jurisdictional
deficiency.  Accordingly, we reverse the trial court=s final judgment and remand.

I.   Background

The City
approved an ordinance placing two propositions for amendments to the city
charter on the ballot in a November 2004 election: AProp. 1@ and AProp. 2.@[1]

Prop. 1
was placed on the ballot pursuant to the City=s own motion.  Prop. 1 pertains to ALimits on Annual Increases in City
Property Taxes and Utility Rates.@  Prop. 1 grants the City Afull authority to assess and collect
any and all revenues of the city without limitation, except as to ad valorem
taxes and water and sewer rates.@  Although the full text of Prop. 1
was set forth in the election ordinance, the following summary was included on
the ballot:








The Charter of the City of Houston shall be amended to
require voter approval before property tax revenues may be increased in any
future fiscal year above a limit measured by the lesser of 4.5% or the
cumulative combined rates of inflation and population growth.  Water and sewer
rates would not increase more than the cumulative combined rates of inflation
and population growth without prior voter approval.  The Charter Amendment also
requires minimum annual increases of 10% in the senior and disabled homestead
property tax exemptions through the 2008 tax year.

 Prop. 2
resulted from a citizen-initiated referendum petition.  Prop. 2 concerns ALimits on All Combined City Revenues.@  Although the full text of Prop. 2
was set forth in the election ordinance, the following summary was included on
the ballot:

The City Charter of the City of Houston shall be
amended to require voter approval before the City may increase total revenues
from all sources by more than the combined rates of inflation and population,
without requiring any limit of any specific revenue source, including water and
sewer revenues, property taxes, sales taxes, fees paid by utilities and
developers, user fees, or any other sources of revenues.

On the
November 2004 ballot, the electorate was allowed to vote for or against each
proposition.  Prop. 1 and Prop. 2 each passed with a majority of the votes cast
on the particular proposition.  Prop. 1 received more favorable votes than
Prop. 2.

After
the election, for two independent reasons, the City determined Prop. 1 is
legally binding and Prop. 2 would not be enforced.  First, in the election
ordinance, the following Apoison pill@ provision was included after the text of Prop. 1:

If another proposition for a Charter amendment
relating to limitations on increases in City revenues is approved at the same
election at which this proposition is also approved, and if this proposition
receives the higher number of favorable votes, then this proposition shall
prevail and the other shall not become effective.

Citing this provision,
the City asserts Prop. 1 must prevail because it received more favorable votes
than Prop. 2.

Alternatively,
the City relies on Article IX, Section 19 of the Houston City Charter which
provides, in pertinent part:








. . . at any election for the adoption of amendments
if the provisions of two or more proposed amendments approved at said election
are inconsistent the amendment receiving the highest number of votes shall
prevail.  

The City posits that
Prop. 1 and Prop. 2 are inconsistent; thus, Prop. 1 must prevail because it
received more favorable votes.[2]

Appellees
sued the City, seeking a declaratory judgment that Prop. 1 and Prop. 2 must
both be added to the City Charter.  As we will later discuss in more detail,
appellees are Houston citizens who sponsored and voted for Prop. 2.  In
essence, appellees allege the Apoison pill@ provision is invalid because (1) it was not included within
the text of Prop. 1 in the election ordinance, or (2) alternatively,
enforcement of only Prop. 1 pursuant to the Apoison pill@ provision would violate the Texas
Constitution and Local Government Code.  Appellees also challenge the City=s refusal to enforce Prop. 2 based on
Article IX, Section 19 of the City Charter, alleging (1) Prop. 1 and Prop. 2
are not inconsistent and may peacefully coexist, or (2) alternatively,
application of Article IX, Section 19 would violate the Texas Constitution and
Local Government Code.

The City
filed a plea to the jurisdiction, followed by a supplemental plea,  contending,
inter alia, that appellees lack standing to assert their claim.  The City also
filed a motion for summary judgment and a supplemental motion.  The trial court
denied the City=s plea to the jurisdiction and motion for summary judgment. 
Subsequently, the trial court denied the City=s request for reconsideration of its
motion for summary judgment.  Appellees also filed a motion for summary
judgment which the trial court granted.  The trial court then signed a final
judgment.  We are presented with the appeal from this final judgment.[3]








Meanwhile,
appellees sought writs of mandamus in the First Court of Appeals, complaining
that the City failed to perform certain ministerial duties with respect to the
election.  See In re Robinson, 175 S.W.3d 824, 826B27 (Tex. App.CHouston [1st Dist.] 2005, orig.
proceeding).  The court held that the Mayor had a non-discretionary duty to
certify all the amendments, including Prop. 2, to the Secretary of State.  Id.
at 829B30 (citing Tex. Loc. Gov=t Code Ann. ' 9.007(a) (Vernon 2008)).[4] 
The court also held that City Council had a non-discretionary duty to enter an
order in the city records declaring all the propositions had been adopted by
voters.  Id. at 830B32 (citing Tex. Loc. Gov=t Code Ann. ' 9.005 (Vernon 2008)).[5] 
However, the court specifically expressed no opinion on the validity of Prop. 2Cthe issue in the present case.  See
id.

II.   Standing 








In its
second and third issues, the City contends that appellees lack standing to
assert their claim.  Standing is a constitutional prerequisite to maintaining
suit in federal or state court.  S. Tex. Water Auth. v. Lomas, 223
S.W.3d 304, 307 (Tex. 2007); Williams v. Lara, 52 S.W.3d 171, 178 (Tex.
2001). As a component of subject matter jurisdiction, standing is never
presumed and cannot be waived.  See Tex. Ass=n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443B44, 445 (Tex. 1993); Concerned
Cmty. Involved Dev., Inc. v. City of Houston, 209 S.W.3d 666, 670 (Tex.
App.CHouston [14th Dist.] 2006, pet.
denied).  Subject matter jurisdiction in a declaratory-judgment action depends
on whether the underlying controversy is within the court=s jurisdiction; the Declaratory
Judgment Act does not confer additional jurisdiction upon a court.  Rush v.
Barrios, 56 S.W.3d 88, 105 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).








A party
may challenge subject matter jurisdiction by a plea to the jurisdiction.  Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000); In re
Sullivan, 157 S.W.2d 911, 914 (Tex. App.CHouston [14th Dist.] 2005, orig.
proceeding, [mand. denied]).  A plea to the jurisdiction is a dilatory plea; it
is filed to defeat claims, regardless of whether they have merit.  Bland,
34 S.W.3d at 554; Sullivan, 157 S.W.2d at 914.  When reviewing a trial
court=s order on a plea to the
jurisdiction, we may not weigh the claim=s merits but must consider only the
pleadings and evidence relevant to the jurisdictional issues.  Bland, 34
S.W.3d at 554B55; Sullivan, 157 S.W.2d at 914B15.  When a plea to the jurisdiction
challenges the pleadings, we determine if the plaintiff has alleged facts
affirmatively demonstrating the trial court=s jurisdiction.  Tex. Dep=t of Parks and Wildlife v. Miranda 133 S.W.3d 217, 226 (Tex. 2004)
(citing Tex. Ass=n of Bus. 852 S.W.2d at 446).[6] 
We construe the pleadings in the plaintiff=s favor and look to the pleader=s intent.  Id.  (citing
Tex. Ass=n of Bus., 852 S.W.2d at 446); Sullivan, 157 S.W.2d at 914. 
Standing is a question of law that we review de novo. Concerned Cmty.,
209 S.W.3d at 670 (citing Mayhew v. Town of Sunnyvale, 964 S.W.2d 922,
928 (Tex. 1998)).    Standing may be predicated upon common‑law or
statutory authority.  See Williams, 52 S.W.3d at 178B79; Hunt v. Bass, 664 S.W.2d
323, 324 (Tex. 1984). The common-law rules governing standing apply except when
standing is conferred by statute.  Williams, 52 S.W.3d at 178B79; Hunt, 664 S.W.2d at 324.
In this case, appellees contend (1) they satisfy the common-law rules governing
standing, or (2) alternatively, Prop. 2 includes a provision that is analogous
to statutory conferral of standing.  We disagree with both contentions.

A.        Common-Law Rules Governing
Standing 

The
common-law rules governing standing require Aa real controversy between the
parties, which . . . will be actually determined by the judicial declaration
sought.@  Brown v. Todd, 53 S.W.3d
297, 305 (Tex. 2001); Tex. Ass=n of Bus., 852 S.W.2d at 446; Concerned
Cmty., 209 S.W.3d at 670.  Generally, to have standing, a plaintiff must
demonstrate he Apossesses an interest in a conflict distinct from that of the
general public, such that the defendant=s actions have caused the plaintiff
some particular injury.@  Williams, 52 S.W.3d at 178B79; Concerned Cmty., 209
S.W.3d at 670; see Lomas, 223 S.W.3d at 307; Brown, 53 S.W.3d at
302.

In their
live pleadings, appellees claim they satisfy this standard because each
participated in some or all of the following activities: (1) organized a
petition drive for Prop. 2; (2) helped draft the final wording of the petition
and participated in underwriting this effort; (3) signed the petition later
known as Prop. 2; (4) worked on the ALet the People Vote@ and AVote Yes on Prop 2@ campaigns to ensure passage of Prop.
2; (5) contributed substantially to the AVote Yes on Prop 2@ campaign; (6) were leaders in the  AVote Yes on Prop 2@ advertisement campaign; and (7)
voted in favor of Prop. 2.








The
parties do not cite, and we have not found, authority directly addressing
whether a plaintiff possesses standing by virtue of these activities to
challenge a city=s interpretation of, and refusal to enforce, a
citizen-initiated municipal proposition adopted by voters.  Appellees rely on
two Texas Supreme Court cases to support the contention that they have standing
by virtue of these activities: Glass v. Smith, 244 S.W.2d 645 (Tex.
1951); and Blum v. Lanier, 997 S.W.2d 259 (Tex. 1999).

In Glass,
several members of the City of Austin fire department signed an initiative
petition to call an election on a proposed ordinance concerning employment
issues.  244 S.W.2d at 647.  The Texas Supreme Court affirmed a writ of
mandamus requiring city authorities to hold an election after the requisite number
of signatures were collected.  See id. at 648, 653B54.  The court held that the
plaintiffs, as petition signers, had a justiciable interest in ensuring their
proposed ordinance was submitted to the electorate.  See id.

More
recently, in Blum, the plaintiff spearheaded a petition drive, and
signed the petition, to propose an amendment to the City of Houston charter
ending preferential treatment in public employment and contracting.  997 S.W.2d
at 260, 261.  The City Council adopted an ordinance calling an election on the
proposed amendment.  Id. at 261.  The plaintiff objected to the
description of the amendment to be used on the ballot.  Id.  The Texas
Supreme Court ultimately held that the plaintiff had standing to seek
injunctive relief forbidding the City=s use of misleading language.  See
id. at 260B65.  Relying in part on Glass, the court stated that petition
signers, as sponsors of an initiative, possess a justiciable interest in the
valid execution of the election that is distinct from the interest possessed by
the general public.  Id. at 262 (citing Glass, 244 S.W.2d at 648,
653B54).

Citing Glass
and Blum, appellees argue that their sponsorship of Prop. 2 and
involvement to ensure passage establish standing to challenge the City=s refusal to enforce the
proposition.  In contrast, the City argues that these facts are insufficient to
establish standing and Glass and Blum are inapplicable.  The City
primarily relies on Brown, 53 S.W.3d 297. Although Brown is not
directly on point, it does support the  contention that appellees lack
standing.








In Brown,
Houston City Council approved an ordinance prohibiting discrimination based on
sexual orientation in city employment and contracting.  Id. at 299. 
Pursuant to a procedure authorized by the city charter, the plaintiff and other
citizens organized a campaign to repeal the ordinance.  Id.  At a
referendum election in 1985, voters, including the plaintiff, rejected the
ordinance.  Id.  In 1998, the Mayor issued an executive order,
prohibiting discrimination based on sexual orientation in municipal employment
and city programs.  Id.  Nine days later, the plaintiff sued the Mayor
and the City, seeking a declaration that the executive order was invalid and an
injunction against its enforcement.  Id.[7] 
The plaintiff alleged that the executive order nullified the 1985 election
results and usurped City Council=s authority.  Id.

The
Texas Supreme Court ultimately held that the plaintiff lacked standing.  Id.
at 302B04.  The plaintiff claimed standing
because he voted for the prevailing 1985 referendum rejecting the
anti-discrimination ordinance and the subsequent executive order negated his
vote.  Id. at 302.  The court concluded the plaintiff did not possess a
sufficiently peculiar interest based on his status as a voter and he failed to
identify a unique injury.  See id.  Instead, his injury was shared by
all 198,563 electors who voted for the 1985 referendum rejecting the anti-discrimination
ordinance.  Id.  Accordingly, the plaintiff had no standing to protect
his Ano@ vote from future action.  Id.
at 303.

Appellees
attempt to distinguish Brown by emphasizing that the plaintiff asserted
standing only as a voter, whereas appellees claim standing as voters and
sponsors of Prop. 2.  Therefore, appellees argue their position is similar to
the status of the Glass and Blum plaintiffs.








We
acknowledge the Brown court specifically noted that the plaintiff
asserted standing as a voterCnot as a petition organizer and signer.  Id. at 302
n.2.  However, the court then discussed the effect of sponsorship activities on
the standing issue.  See id. at 302B03.[8] 
The court recognized the Glass and Blum plaintiffs had standing
because they challenged the process relative to their sponsored
referendum.  See id.  As petition signers, they possessed a
particular interest in ensuring their proposed ordinances were submitted to the
electorate and properly worded on the ballot.  See id. (explaining Glass,
244 S.W.2d at 648; Blum, 997 S.W.2d at 262, 264).

However,
the Brown court distinguished a challenge to the election process
from a claim concerning the election results, stating it has never recognized
standing on the basis of the resultsCas opposed to the processCof an initiative election.  Id. at
302.  Significantly, the court stated, ABlum and Glass are narrow holdings,
affording petition signers the right to challenge the referendum process
but saying nothing about the right to protect the referendum results from
subsequent changes.@  Id.  at 303 (emphasis added).  Further, the court
remarked that Blum and Glass were consistent with the judiciary=s limited role in election disputes,
which provides a remedy to undo elections tainted by fraud, illegality, or
other irregularity.  Id.








Accordingly,
the Brown court did not directly address the standing afforded a
referendum sponsor with respect to the results of an election.  See id. 
at 302B04.  However, the court did indicate
that a referendum sponsor=s standing is limited to challenging the election process and
does not extend to protecting the results from subsequent change.  See id. 
Appellees do not cite, and we have not found, any authority since Brown,
in which the Texas Supreme Court has extended the standing afforded referendum
sponsors by allowing them to protect the election results from subsequent
change.  In fact, when granting appellees= mandamus petition, the First Court
of Appeals cited Brown as recognizing ABlum and Glass stand for the
proposition that petition signers have standing to challenge the referendum
process, although they do not have standing to challenge the results of the
election.@  Robinson, 175 S.W.3d at 827 (citing Brown, 53 S.W.3d at
301).[9]

 Therefore,
in light of Brown, the parties dispute whether appellees= claim concerns the election process
or results.  We conclude that appellees= claim cannot be characterized as a
challenge to the election process.  Because Prop. 2 was passed, obviously
appellees would not challenge the process and argue it was tainted by fraud,
illegality, or other irregularity.  Clearly, appellees are completely satisfied
with the election process because they achieved their objective: Prop. 2 was
submitted to the electorate; voters passed the proposition; and it was
certified and adopted.[10]








Rather,
appellees are attempting to protect the election results from subsequent change
by the City.  As appellees acknowledge at one point in their brief, they Aare not in any way contesting the
validity of the election.  Instead, Appellees are arguing that [the City=s] interpretation and implementation
of the election results is completely inaccurate and illegal.@ (emphasis added).[11] 
In short, this dispute has moved beyond the election process.  The City=s ministerial duties with respect to
the election process are complete.  Instead, appellees now challenge the City=s decision-making relative to its
construction of two adopted propositions (Prop. 1 and Prop. 2) and its refusal
to enforce one such proposition (Prop. 2).[12]

Arguably,
appellees have a greater interest in enforcement of Prop. 2 than other voters. 
Additionally, we recognize appellees= efforts to place Prop. 2 on the
ballot and obtain passage seem futile if the City ultimately refuses to enforce
the proposition.  As the Brown dissenting author questioned, Awhat use is an interest in an
election=s process without a corresponding
interest in enforcing the results?@  Brown, 53 S.W.3d at 307 (Enoch,
J., concurring and dissenting).[13] 
Nonetheless, the majority opinion in Brown supports a conclusion that
referendum sponsors, and voters, lack standing to challenge the City=s construction of, and refusal to
enforce, an adopted proposition after the election is complete.  See id.
at 302B04.








Moreover,
under the standing criteria imposed by our courts, we do not focus solely on
whether the claimant asserts a particular interest; rather, we consider whether
the claimant alleges a distinct injury caused by the defendant=s actions.  See Lomas, 223
S.W.3d at 307; Williams, 52 S.W.3d at 178B79; Brown, 53 S.W.3d at 302; Concerned
Cmty., 209 S.W.3d at 670.  Because Prop. 2 was submitted to the electorate
and passed by voters and adoption was reflected in the city records, appellees
have not alleged any distinct injury by virtue of their sponsorship
activities.  Instead, appellees are now essentially equal to all other persons
who voted for Prop. 2 and wish to ensure it is subsequently enforced.  In a
broader sense, appellees are now equal to all City taxpayers, or even citizens,
who wish to ensure Prop. 2 is enforced because they might be affected by its
terms.  Therefore, appellees have not claimed an injury caused by the City=s refusal to enforce Prop. 2 that is
distinct from the injury, if any, suffered by other voters, taxpayers, or
citizens.

In sum,
appellees have not demonstrated they possess standing under the common-law
standard.  We sustain the City=s second issue.

B.        The Language of Prop. 2

            Alternatively,
in their live pleadings, appellees allege they have standing based on the
following provision in Prop. 2:

Any person who voted in a City of Houston election
held on this Amendment shall have the right and standing to enforce the
provisions of any Charter Amendment approved by the voters at this election by
injunction, declaratory judgment, contempt and/or any other remedy provided by
law, notwithstanding any other valid law of equal or lesser authority in
conflict, including all of the above paragraphs of this Amendment.

Appellees
cite authority recognizing that citizens who exercise their petition and
referendum rights Aact as and >become in fact the legislative branch of the municipal
government.=@  Blum, 997 S.W.2d at 262 (quoting Glass, 244
S.W.2d at 649).  Therefore, appellees contend the above-cited provision is
analogous to a statutory conferral of standing by the Texas Legislature.  For
several reasons, we disagree that this provision is valid as a statutory
conferral of standing.








Appellees
correctly assert the Texas Legislature may confer standing through a statute.  See
Scott v. Bd. of Adjustment, 405 S.W.2d 55, 56B7 (Tex. 1966); Sullivan, 157
S.W.2d at 915; see also Williams, 52 S.W.3d at 178B79; Hunt, 664 S.W.2d at 324.  
The  Ajudge‑made criteria@ for determining standing do not
apply when the Legislature has conferred standing through a statute.  Sullivan,
157 S.W.2d at 915.[14]  However,
citizens exercising their petition and referendum rights act as the legislative
body of a municipal governmentCnot the Texas Legislature.  See
Blum, 997 S.W.2d at 262.  Appellees cite no cases in which the Texas
Supreme Court, or any other court, has expanded statutory standing to
incorporate  municipal referendum sponsors seeking to confer standing through a
proposition.

 Further,
as we have mentioned, the requirement of standing derives from constitutional
principles: the separation‑of‑powers doctrine, prohibiting courts
from issuing advisory opinions deciding abstract questions of law without
binding the parties; and, in Texas, the open‑courts provision, which
contemplates access to the courts for only those litigants who have suffered an
actual, as opposed to a general or hypothetical, injury.  Lomas, 223
S.W.3d at 307 (citing Brown, 53 S.W.3d at 302; Tex. Ass=n of Bus., 852 S.W.2d at 443B44). Statutory conferral of standing
by the Texas Legislature is an exception to the general criteria for
determining standing.  See Hunt, 664 S.W.2d at 324; see also
Williams, 52 S.W.3d at 178B79; Sullivan, 157 S.W.2d at 915.  We decline to create
a further exception concerning a requirement grounded in constitutional
principles when the Texas Supreme Court has not done so.








In
addition, appellees filed this suit in state district court.  The City argues
that a city government has no authority to dictate the existence of
subject matter jurisdiction, including standing, in a state district
court.  The City cites Berry v. City of Forth Worth, in which a
municipal ordinance, defining the method for service of process in a civil
action arising out of a violation, conflicted with general Texas law governing
service of process.  See 124 S.W.2d 842, 846 (Tex. 1939).  The supreme
court recognized that a trial court obtains personal jurisdiction over a
defendant in a civil action via service of process.  See id.  Therefore,
the court held that the pertinent portion of the ordinance was invalid because
a city government lacked power to define how Texas civil courts obtain personal
jurisdiction over a defendant.  See id.  Likewise, Berry supports
a conclusion that a municipal governmentCwhether the city council or
referendum sponsors acting as the legislative branchClacks power to dictate existence of
subject matter jurisdiction, including standing, in a state district court.

In
response, appellees cite Article IX, Section 1 of the Houston City Charter
which provides, in pertinent part:

Any citizen who is a property tax-payer of the City of
Houston may maintain an action in the proper court to restrain the execution of
any illegal, unauthorized or fraudulent contract or agreement on behalf of said
City, and to restrain any disbursing officer of said City from paying any
illegal, unauthorized or fraudulent bills, claims or demand against said City,
or any salaries or compensation to any person in its administrative service
whose appointment has not been made in pursuance of the provisions of law and
the regulations in force thereunder. . . .








According
to appellees, this provision indicates that a city government may confer
standing, even in state district court.  However, this provision is fairly
consistent with a long-established, limited exception to the typical standing
criteria.  Specifically, a taxpayer has standing to sue in equity to enjoin the
illegal expenditure of public funds without showing a distinct injury. Williams,
52 S.W.3d at 179; Bland, 34 S.W.3d at 555B56; see Lomas, 223 S.W.3d at 
307B08; Osborne v. Keith, 177
S.W.2d 198, 200 (Tex. 1944).  This exception encompasses a taxpayer=s right to enjoin expenditure of
public funds under a void or illegal contract.  Osborne, 177 S.W.2d at
200; see Lomas, 223 S.W.3d at 307B08; Bland, 34 S.W.3d at 555B58.[15]
        

In
contrast, the standing provision in Prop. 2 alters the established criteria for
determining standing in a state district court.  The provision confers standing
to enforce Prop. 2 on any person who voted in the election, without requiring
the voter to assert a distinct injury.  However, the provision conflicts with Brown,
in which the court held that a voter lacked standing to protect the results of
an election from future action by the City because he could not allege a
sufficiently distinct injury.  See 53 S.W.3d at 302B04.  Consequently, we decline to
recognize a standing provision in a citizen-initiated, municipal proposition
when enforcement would circumvent a holding of our supreme court.

Moreover,
it is one matter for the City to prescribe that it may be sued by taxpayers
relative to certain issues.  It is quite another matter for referendum
sponsors, notwithstanding their role as the City=s Alegislative body,@ to prescribe that they, and others,
may sue the City.  In this regard, the City=s ability to govern effectively might
be seriously hampered if referendum sponsors were allowed to confer standing on
persons simply by including a provision in a proposition.








For
instance, if the standing provision at issue were valid, 567, 331 persons who
voted in the election at issue could sue the City over its refusal to initially
implement the adopted proposition.  Further, the provision is somewhat vague
because it gives voters Astanding to enforce the provisions of@ Prop. 2.  Arguably, if this
provision were valid, voters could also challenge the City=s actions in every future budget
cycle to ensure compliance with Prop. 2.  Consequently, enforcing this
provision would potentially subject the City=s decision-making to numerous,
unlimited challenges by persons who can claim no distinct injury therefrom.  We
reject appellees= suggestion that the distinct-injury requirement imposed by
our courts may be so easily circumvented by inclusion of a standing provision
in a citizen-initiated proposition.

Finally,
appellees= reasoning relative to the standing provision in Prop. 2 is circular.  In
short, enforcing the standing provision would entail a determination that Prop.
2 is validCthe dispute in this litigation.  But, a court cannot declare Prop. 2
valid unless appellees first establish standing.  Appellees maintain the
standing provision is nonetheless effective because the City entered an order
in its records reflecting Prop. 2 was adopted by voters.  Local Government Code
section 9.005(b) provides that an amendment does not take effect until
the governing body enters the prescribed order reflecting adoption by voters. 
Tex. Loc. Gov=t Code Ann. ' 9.005(b).  However, section 9.005(b) does not mandate that
the amendment is necessarily valid upon entry of the order.  See id. 
Indeed, when compelling the City to enter the prescribed order, the First Court
of Appeals acknowledged that issues remained regarding validity of Prop. 2.  See
Robinson, 175 S.W.3d at 830B32.  Although the City performed this
ministerial act to complete the election process, validity of Prop. 2 is
disputed.  Consequently, even if a standing provision in a citizen-initiation
proposition were analogous to statutory conferral of standing by the Texas
Legislature, we cannot conclude that the statutory-standing principle applies
in the present situation.

In sum,
appellees do not have standing based on the above-cited provision in Prop. 2. 
We sustain the City=s third issue.

III.  Conclusion








In sum,
appellees have failed to demonstrate they possess standing under common-law
rules or the above-cited provision in Prop. 2.  Therefore, the trial court
erred by denying the City=s plea to the jurisdiction.  The City requests that we
reverse the trial court=s judgment and order dismissal of appellees= suit for lack of jurisdiction. 
Instead, we conclude that remand is the appropriate disposition.

If a
plaintiff fails to plead sufficient facts affirmatively demonstrating the trial
court=s jurisdiction, but the pleadings do
not affirmatively demonstrate incurable defects in jurisdiction, the issue is
one of pleading sufficiency and the plaintiff should be afforded the
opportunity to amend.  Miranda, 133 S.W.3d at 226B27; County of Cameron v. Brown,
80 S.W.3d 549, 555 (Tex. 2002).  However, if the pleadings affirmatively negate
the existence of jurisdiction, a plea to the jurisdiction may be granted
without allowing the plaintiff an opportunity to amend.  Miranda, 133
S.W.3d at 226; Brown, 80 S.W.3d at 555.  The Texas Supreme Court
recently recognized that the opportunity to amend pleadings that are
insufficient to establish, but do not affirmatively negate, jurisdiction arises
once a court determines the pleadings are insufficient.  See Tex.
A&M Univ. Sys. v. Koseoglu, 233 S.W.3d 835, 839B40 (Tex. 2007).  In particular, a
plaintiff deserves the opportunity to amend his pleadings, if the defects are
curable, when an appellate court determines a plea to the jurisdiction should
have been sustained.  See id.[16]








In this
case, although appellees have failed to establish standing, their pleadings do
not affirmatively negate standing.  We cannot foreclose the possibility that
appellees may allege other facts demonstrating standing.  Therefore, appellees
are allowed a Areasonable opportunity@ to amend their pleadings before the trial court=s final disposition of the City=s plea to the jurisdiction.

Accordingly,
we reverse the trial court=s final judgment and remand for further proceedings
consistent with the opinion.

 

 

/s/        Charles
W. Seymore

Justice

 

Judgment rendered and
Opinion filed April 3, 2008.

Panel consists of
Justices Yates, Seymore, and Edelman.*          

 









[1]  AProp. 3,@ relating to the City Controller=s role in performing internal audits, was also
included on the ballot, but this proposition is not at issue in this suit.





[2]  As the City notes, enforcement of only Prop. 1
pursuant to the Apoison pill@
provision does not require an inconsistency between Prop. 1 and Prop. 2.  In
contrast, Article IX, Section 19 of the city charter requires that amendments
approved at the same election be inconsistent before the one receiving more
votes must prevail.





[3]  Curiously, the final judgment omits any relief other
than awarding attorney=s fees to appellees.  The trial court generally
recited that it granted final judgment in favor of appellees.  The trial court
also stated that it granted appellees=
motion for summary judgment and denied the City=s motion for summary judgment, motion for reconsideration, and motion
for denial of attorney=s fees.  The trial court incorporated these orders
into the final judgment.  However, the trial court did not make any
declarations regarding the rights of the parties.  In particular, the trial
court did not declare that Prop. 2 is effective as requested by appellees in
their petition.  Moreover, in the referenced orders, the trial court did not
make any declarations.  Nevertheless, because appellees lack standing, we need
not consider the effect of a judgment which does not expressly grant any relief
except attorney=s fees.





[4]  See Tex. Loc. Gov=t Code Ann. '
9.007(a) (Vernon 2008) (AAs soon as practicable after a municipality adopts a
charter or charter amendment, the mayor or chief executive officer of the
municipality shall certify to the secretary of state an authenticated copy of
the charter or amendment under the municipality=s seal showing the approval by the voters of the municipality.@).





[5]  See Tex. Loc. Gov=t Code Ann. '
9.005 (Vernon 2008) (A(a) A proposed charter for a municipality or a
proposed amendment to a municipality=s
charter is adopted if it is approved by a majority of the qualified voters of
the municipality who vote at an election held for that purpose. (b) A charter
or an amendment does not take effect until the governing body of the
municipality enters an order in the records of the municipality declaring that
the charter or amendment is adopted.@).

 

 

 





[6]  In this case, the City does not dispute appellees= factual allegations purportedly establishing
standing.  The City merely contends that, as a matter of law, these facts do
not confer standing. Further, there are no factual issues created by the
evidence pertinent to the jurisdictional issue. 





[7]   A City Council member also sued the City, and the
court evaluated whether he had standing. See Brown, 53 S.W.3d at 299,
304B06. But, only the issue concerning standing of the
private citizen is relevant to the present case. 





[8]  Although the plaintiff claimed standing only as a
voter, he was indeed a sponsor of the referendum because he and others
organized a campaign and petitioned the City to repeal the anti-discrimination
ordinance.  See Brown, 53 S.W.3d at 299. 





[9]  Appellees also attempt to distinguish Brown
because the Mayor=s executive order, which allegedly nullified voters= rejection of the anti-discrimination ordinance,
occurred thirteen years after the election.  See Brown, 53 S.W.3d
at 299.  However, the court did not indicate this passage of time influenced
its statement that the court has never recognized standing of referendum
sponsors or voters to protect election results from subsequent change.  See
id. at 302B04.  Therefore, despite this substantial passage of
time between the election and the Mayor=s
action, we find Brown is persuasive in this case. 





[10]  When granting appellees= mandamus petition, the First Court of Appeals
recognized they had standing to compel the City to perform its ministerial acts
of certifying the election results and recording adoption of Prop. 2 in the
city records because appellees challenged the process, not the results, of the
election.  See Robinson, 175 S.W.3d at 828.  Thus, the court
stated that appellees had a particular interest in seeking to have a
proposition they Asponsored@
enacted as law once it was adopted by citizens in a referendum election.  Id. 
However, the court did not consider whether appellees had standing to challenge
the City=s determination that Prop. 2 is invalid and its
refusal to enforce the proposition once adopted.  See id. at 826B32. 





[11]  Appellees make somewhat inconsistent arguments.  On
one hand, appellees argue they satisfy the concept affording standing to
petition signers challenging the election process.  On the other hand, in
response to the City=s separate argument that appellees were required to
file an election contest, appellees make the above-quoted statement, insisting
they are not challenging the election process.  In fairness to appellees, the
City also makes somewhat inconsistent arguments by contending appellees were
required to file an election contest, while claiming this dispute involves the
election results.  Regardless of these inconsistent arguments, we conclude this
dispute concerns the election resultsCnot
the process.





[12]  As we have explained, the City refuses to enforce
Prop. 2 based on its construction of Prop. 2 in conjunction with Prop.1.





[13]  The Brown dissenting author opined that the
plaintiff possessed standing, as referendum sponsor and voter,  to challenge
the Mayor=s action nullifying the previous election results.  See
53 S.W.3d at 306B08 (Enoch, J., concurring and dissenting).





[14]  Instead, the analysis is a straight construction of
the relevant statute to determine upon whom the Legislature conferred standing
and whether the claimant falls in that category.  Sullivan, 157 S.W.2d
at 915.





[15]  Usually, to possess standing to contest government
decision-making, a taxpayer must show he has suffered a particularized injury
distinct from one sustained  by the general public because A>[g]overnments cannot operate if every citizen who
concludes that a public official has abused his discretion is granted the right
to come into court and bring such official=s
public acts under judicial review.=@  Bland,
34 S.W.3d at 555B56 (quoting Osborne, 177 S.W.2d at 200). 





[16]  Until recently, some disagreement existed among
courts regarding the point at which a plaintiff must be afforded an opportunity
to amend.  See Tex. A&M Univ. Sys. v. Koseoglu, 167
S.W.3d 374, 380B84 (Tex. App.CWaco
2005), rev=d in part,
233 S.W.3d 835 (Tex. 2007) (explaining various approaches of courts).  Under
one view, a plaintiff was allowed an opportunity to amend his pleadings after a
court determined they were insufficient to establish jurisdiction.  See id. 
Other courts indicated that the opportunity to amend arose after a defendant
filed its plea to the jurisdiction notifying the plaintiff of alleged defects,
but before the trial court ruled on the plea.  See id.  Under
this reasoning, a plaintiff who actually amended his pleadings after the
defendant filed its plea to the jurisdiction could be denied further
opportunity to amend even if the court sustained the plea.  See id. 
The Texas Supreme Court recently clarified the applicable standard:   A>a plaintiff may stand on his pleadings in the face of
a plea to the jurisdiction unless and until a court determines that the
plea is meritorious.= . . . [t]hereafter . . . the plaintiff must be given >a reasonable opportunity to amend his pleadings to
attempt to cure the jurisdictional defects found= unless the pleadings are incurably defective.@  See Koseoglu, 233 S.W.3d at 839 (quoting
lower court, Koseoglu, 167 S.W.3d at 383, and expressly agreeing with
its statement) (emphasis added).  The court rejected the opposite view because
that Aproposed rule would essentially allow governmental
entities the unjust advantage of being not only a litigant, but also the judge
of the plaintiff=s pleadings.@  Id.
at 839B40.

 





* 
Senior Justice Richard H. Edelman sitting by assignment.