**In re Carroll G. ROBINSON, Bruce R. Hotze and Jeffrey N. Daily, Relators.**

Nos. 01–04–01276–CV, 01–05–00374–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 14, 2005.

Amanda Eileen Staines Peterson, W. Andy Taylor, Houston, for relators.

Catherine B. Smith, Randy L. Pourteau II, Senior Asst. City Atty., Patrick W. Mizell, Scott J. Atlas, Arturo G. Michel, City of Houston, City Atty., Patrick Zummo, Zummo & Midkiff, L.L.P., Stephen Douglas Pritchett, Houston, for respondents.

Panel consists of Chief Justice RADACK and Justices NUCHIA and HIGLEY.

## OPINION

SHERRY RADACK, Chief Justice.

In these original proceedings, relators seek writs of mandamus to compel the Mayor and the City Council of Houston, Texas (collectively, "the City") to (1) enter an order declaring the adoption of three propositions as new amendments to the city charter, and (2) certify these new amendments to the Texas Secretary of State. We grant the requested relief.

## BACKGROUND

On November 2, 2004, the registered voters of the city of Houston voted on three propositions to amend the city charter. Proposition One was endorsed by the Mayor and placed limits on annual increases in city property taxes and utility rates without prior voter approval. The ballot language of Proposition 1 provided:

The Charter of the City of Houston shall be amended to require voter approval before property tax revenues may be increased in any future fiscal year above a limit measured by the lesser of 4.5% or the cumulative combined rates of inflation and population growth. Water and sewer rates would not increase more than the cumulative combined rates of inflation and population growth without prior voter approval. The Charter Amendment also requires minimum annual increases of 10% in the senior and disabled homestead property tax exemptions through the 2008 tax year.

Proposition Two was placed on the ballot after relators drafted a referendum petition, organized and underwrote a petition drive, and obtained the necessary signatures to have the petition placed on the ballot. Proposition 2 placed limits on increases in combined city revenues without prior voter approval. The ballot language of Proposition 2 provided:

The City Charter of the City of Houston shall be amended to require voter approval before the City may increase total revenues from all sources by more than the combined rates of inflation and population, without requiring any limit of any specific revenue source, including water and sewer revenues, property taxes, sales taxes, fees paid by utilities and developers, user fees, or any other source of revenue.

Proposition Three provided:

The City Charter of the City of Houston shall be amended to provide for the City Controller to conduct internal audits of City departments, offices, agencies and programs.

In the November 2 election, voters were permitted to vote "FOR" or "AGAINST" each of the three propositions. After the election was completed, the City Counsel canvassed the vote and declared the results of the election as follows:

|  | PROP 1 | PROP 2 | PROP 3 |
|---|---|---|---|
| FOR | 280,596 | 242,697 | 352,063 |
|  | 63.95% | 56.46% | 84.7% |
| AGAINST | 158.152 | 187,169 | 63,596 |
|  | 36.05% | 43.54% | 15.3% |

As shown above, each proposition passed by greater than 50% of the vote

cast on that proposition.[1]

In these original proceedings, relators complain that the Mayor has failed to comply with his ministerial duty under article 9.007 of the Local Government Code[2] to certify to the secretary of state authenticated copies of the amendments showing that they have been approved by the voters of the municipality. The original proceeding in which the Mayor is the respondent has been docketed in the court under cause number 01–04–01276–CV. Relators also contend the City Council has not complied with its ministerial duty under section 9.005(b) of the Local Government Code[3] to enter an order in the records of the city declaring that the amendments were adopted. The original proceeding in which the City Council is the respondent has been docketed in the court under cause number 01–05–00374–CV.

## JURISDICTION

■ Our jurisdiction to consider an election mandamus is found in article 273.061 of the Election Code, which provides:

> The supreme court or a court of appeals may issue a writ of mandamus to compel the performance of any duty imposed by law *in connection with the holding of an election* or a political party convention, regardless of whether the person responsible for performing the duty is a public officer.

TEX. ELEC.CODE ANN. § 273.061 (Vernon 2003) (emphasis added).

The City contends that the duties of entering an order declaring the amendment adopted and certifying its adoption to the secretary of do not involve duties imposed "in connection with *the holding* of an election." We disagree.

■ The supreme court has stated "that an election in this state is not a single event, but a *process,* and that the entire *process* is subject to contest." *Dickson v. Strickland,* 114 Tex. 176, 265 S.W. 1012, 1018 (1924). Although this case does not involve an election contest, it does involve the enforcement by mandamus of duties involved with the "holding of an election," an election being the *entire process* by which amendments to the municipal code are voted on, enacted, and made effective. *See Grant v. Ammerman,* 437 S.W.2d 547, 548–49 (Tex.1969) (duty to canvas results of election subject to mandamus because "canvassing of votes is a part of the election procedure and is necessary to the determination of the result.").

---

1. We note that whether a charter amendment has been adopted, or passed, is determined from examining the votes cast for or against it, irrespective of the total number of votes that may have been cast in the election. *Ladd v. Yett,* 273 S.W. 1006, 1011 (Tex.Civ.App.-Austin 1925, writ dism'd w.o.j.).

2. Article 9.007(a) of the Local Government Code provides:

   (a) As soon as practicable after a municipality adopts a charter or charter amendment, the mayor or chief executive officer of the municipality shall certify to the secretary of state an authenticated copy of the charter or amendment under the municipality's seal showing the approval by the voters of the municipality.

TEX. LOC. GOV'T CODE ANN. § 9.007(a) (Vernon 1999).

3. Article 9.005 of the Local Government Code provides:

   (a) A proposed charter for a municipality or a proposed amendment to a municipality's charter is adopted if it is approved by a majority of the qualified voters of the municipality who vote at an election held for that purpose.
   (b) A charter or an amendment does not take effect until the governing body of the municipality enters an order in the records of the municipality declaring that the charter or amendment is adopted.

TEX. LOC. GOV'T CODE ANN. § 9.005 (Vernon 1999).

Like the duty to canvass votes, which occurs after an election is held, we are of the opinion that the duty to certify and make effective laws that have been validly adopted by the voters is a necessary component of the election process. The "holding of an election" would be a "vain proceeding" if an amendment validly adopted by the voters of the city never becomes law. *See City of Dallas v. Dallas Consol. Elec. St. Ry. Co.*, 105 Tex. 337, 148 S.W. 292, 294 (1912) ("[The canvassing of votes] is an integral part of the election itself, without which the election is a vain proceeding ...."). As such, we hold that mandamus will lie to enforce ministerial duties arising in connection with an election, even though those duties may not arise until after the results of the election have been canvassed.

### STANDING

■ The City also claims that the relators do not have standing to bring these mandamus proceedings. Relying on *Brown v. Todd*, 53 S.W.3d 297 (Tex.2001), the City argues that the relators, as voters on propositions 1, 2, and 3, do not have standing to bring these proceedings because they have suffered no injury that is distinct from that of any other voter.

In *Brown*, the plaintiff brought suit against the mayor of the city of Houston, seeking a judgment declaring that an executive order issued by the mayor was invalid because it effectively nullified the result of a previous referendum election. *Id.* at 299. The plaintiff claimed standing based solely on his status as a voter in the referendum election. *Id.* at 302 n. 2. In holding that the plaintiff did not have standing, the supreme court stated, "In no way does [plaintiff's] status as a voter give him an interest sufficiently peculiar to satisfy our standing requirements." *Id.* at 302.

In *Brown*, the court acknowledged that there was a narrow exception to the general rule that voters do not have standing. *Id.* In *Blum v. Lanier*, the court held that a voter who signed an initiative petition had standing to challenge the form in which a referendum was put before the public. 997 S.W.2d 259, 262 (Tex.1999). Similarly, in *Glass v. Smith*, the court recognized petition signers standing to seek a writ of mandamus against municipal authorities to hold a voter-initiated election after the requisite number of signatures had been obtained on the petition. 150 Tex. 632, 244 S.W.2d 645, 648 (1951). As the *Brown* court recognized, *Blum* and *Glass* stand for the proposition that petition signers have standing to challenge the referendum process, although they do not have standing to challenge the results of the election. 53 S.W.3d at 301–01.

These cases are more like *Blum* and *Glass* than *Brown* because the relators are not challenging the *results* of the election by way of this mandamus. Instead, they are challenging the *process* of the election, i.e., the City's refusal to see that the results of the election are certified to the secretary of state and recorded in the City's records so that they might become effective. Also like *Blum* and *Glass*, relators claim that their standing is not based solely on their status as voters. Instead, relators argue that they have a particular interest in the outcome of this case because they organized and financed a petition drive to get Proposition 2 on the ballot, helped draft the wording of the referendum petition, signed the petition, and voted for Proposition 2. We agree that relators have a particular interest in seeking to have a proposition that they "sponsored" enacted as law once it is adopted by the citizens of the city in a referendum election.

## MINISTERIAL DUTY

Having decided that we have jurisdiction to consider these mandamus proceedings and that relators have standing to bring them, we turn next to the issue of whether mandamus will lie, i.e., whether respondents have failed to perform ministerial duties for which relators have no adequate remedy at law. We examine the statutory basis of the two duties alleged as the basis of this original proceeding.

### Section 9.007 of the Local Government Code

The first statute on which relators rely in seeking mandamus relief is section 9.007 of the Local Government Code, which provides:

> (a) As soon as practicable after a municipality adopts a charter or charter amendment, *the mayor* or chief executive officer of the municipality *shall certify* to the secretary of state an authenticated copy of the charter or amendment under the municipality's seal showing the approval by the voters of the municipality.

TEX. LOC. GOV'T CODE ANN. § 9.007(a) (Vernon 1999) (emphasis added).

We begin by noting that this section imposes a duty on the Mayor. Therefore, the Mayor, not the City Council, is the proper respondent for a mandamus arising out of this statute.

■ The City argues that the duty imposed on the Mayor in this section does not arise until after the City Council complies with its duty under section 9.005 to enter an order declaring that the charter amendments are adopted. We disagree.

The language of article 9.007 clearly states that the Mayor's duty arises "as soon as practicable after a municipality *adopts* ... a charter amendment." A charter amendment is "adopted" when it is "approved by a majority of the qualified voters of the municipality who vote at an election." *See* TEX. LOC. GOV'T CODE ANN. § 9.005(a) (Vernon 1999). Therefore, we conclude that the City of Houston "adopted" the propositions when the voters passed each of the propositions by majority vote on November 2, 2004. The Mayor's duty under section 9.007 was triggered by the municipality's vote on November 2, 2004, and not by whether the City Council subsequently acted to make the propositions that were adopted that day effective.

We also note that section 9.007 states that the mayor "shall" certify to the secretary of state a certified copy of the amendment adopted by the voters. In the case of *In re Roof,* the court considered whether the city and the city secretary had a ministerial duty to submit a proposed charter amendment to the voters. 130 S.W.3d 414 (Tex. App–Houston [14th Dist.] 2004) (orig.proceeding). The relevant statute giving rise to the alleged duty provided that "[t]he governing body **shall** submit a proposed charter amendment to the voters for their approval at an election if the submission is supported by a petition signed by [the requisite number of voters]." *Id.* at 416 (emphasis added). Nevertheless, the city secretary refused to submit the proposed charter amendment. *Id.* at 415. She did not contest the number of qualified signatures on the petition, but argued that she could not certify the petition because, in her estimation, the proposed charter amendment conflicted with the city charter, general state law, and the Texas Constitution. *Id.* The court of appeals held that it was improper for the city secretary to refuse to certify the petition based on her opinion that the proposed charter amendment conflicted with existing law. *Id.* at 418. The court further held that the statute did not give the city secretary any discretionary duties.

*Id.* Once the requisite number of petition votes were attained, she had a nondiscretionary duty to submit the proposed charter amendment to the city's governing body. *Id.*

■ Like the statute in *Roof,* article 9.007 uses the mandatory word *shall* in describing the mayor's duty to certify the amendment to the secretary of state. The use of the word *shall* in a statute is generally construed as creating a nondiscretionary duty. *See Albertson's, Inc. v. Sinclair,* 984 S.W.2d 958, 961 (Tex.1999); TEX. GOV'T CODE ANN. § 311.016(a), (b) (Vernon 2005) (providing that the word "may" creates discretionary authority, and the word "shall" imposes a duty).

■ We are similarly unpersuaded by the City's argument that because proposition 2 violates the city charter,[4] the Mayor has no duty certify it to the secretary of state. As with the city secretary in *Roof,* it is improper for the Mayor to refuse to comply with his nondiscretionary duty under section 9.007 simply because he believes that proposition 2, if enacted, would violate the city charter. As stated in *Roof,* "Such questions concerning the validity of proposed charter amendments are properly litigated later." 131 S.W.3d at 418. Indeed, as the briefing in this case indicates, relators have also filed an action in the district court seeking a declaration that propositions 1 and 2 are not inconsistent, an issue we need not address in this proceeding.

■ The City also contends that mandamus will not lie against the Mayor because there is no showing that he has refused to act. *See Terrazas v. Ramirez,* 829 S.W.2d 712, 723 (Tex.1991) (orig.proceeding) (stating that mandamus will generally not lie to compel action that has not first been demanded and refused). However, this position is refuted by the City's own briefing in which it states, "The Mayor intends to propose an order declaring the adoption of Propositions 1 and 3 sometime before the next fiscal year begins on July 1, 2005. He has no plans to propose such an order for Proposition 2 because he believes that entering such an order and adding to the charter a proposition that cannot be enforced, would be both superfluous and confusing." It is clear from this statement that the Mayor is refusing to certify proposition 2.

Therefore, we hold that, pursuant to section 9.007, the mayor has a nondiscretionary duty to certify all three amendments to the secretary of state, even though he believes that they are inconsistent.

### Section 9.005 of the Local Government Code

The second statute on which relators rely in seeking mandamus relief is section 9.005 of the Local Government Code, which provides:

> (a) A proposed charter for a municipality or a proposed amendment to a municipality's charter is adopted if it is approved by a majority of the qualified voters of the municipality who vote at an election held for that purpose.

> (b) A charter or an amendment does not take effect until *the governing body of the municipality enters an order* in the records of the municipality declaring that the charter or amendment is adopted.

TEX. LOC. GOV'T CODE ANN. § 9.005(a),(b) (Vernon 1999) (emphasis added).

---

4. The City Charter provides that, "[a]t an election for the adoption of amendments if the provisions of two or more proposed amendments approved at said election are inconsistent the amendment receiving the highest number of votes shall prevail." Charter of the City of Houston art. IX, § 19.

We begin by noting that this section imposes a duty on the governing body of the municipality. The term governing body, "if used with reference to a municipality, means the legislative body of a city, town, or village, without regard to the name or title given to any particular body." TEX. GOV'T CODE ANN. § 312.011(4) (Vernon 2005). Therefore, the City Council, not the Mayor, is the proper respondent for a mandamus arising out of this statute.

The City argues that section 9.005(b) does not impose a mandatory duty on the City Council to enter an order in the city records declaring that the amendment is adopted. Specifically, the City alleges that "[t]his provision neither mandates that the municipality's governing body must enter such an order nor prescribes the deadline for entering such an order." The City further alleges that "section 9.005 gives the governing body the discretion to determine when or if to enter such an order and allows it the discretion to determine whether a proposed amendment violates a city charter, the laws of Texas, or the Texas Constitution."

It is true that section 9.005(b) does not contain the mandatory word *"must."* However, our inquiry does not stop there. We must determine from the language of the statute whether the legislature intended to create a mandatory duty for the City Council to enter an order declaring the amendment adopted.

In determining the legislature's intent, we first look to the statute's plain and common meaning and presume that the legislature intended the plain meaning of its words. TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."); *Fleming Foods v. Rylander,* 6 S.W.3d 278, 282 (Tex.1999).

Further, in construing a statute, regardless of whether the statute is ambiguous, we may consider the (1) object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; (5) consequences of a particular construction; (6) administrative construction of the statute; and (7) title (caption), preamble, and emergency provision. TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005); *see also Brown v. Owens,* 674 S.W.2d 748, 750 (Tex.1984) (in determining legislative intent, "we must consider the entire Act, its nature and object, and the consequences which follow from each construction.").

As respondents point out, section 9.005(b) concerns when an amendment to the city charter becomes effective. A charter amendment "does not take effect until the governing body of the municipality enters an order in the records ..." TEX. LOC. GOV'T CODE ANN. § 9.005(b).

If we were to accept the City's argument that section 9.005(b) does not create a mandatory duty on the part of the City Council, we would be providing a mechanism by which a city council could effectively "veto" a voter-initiated and adopted amendment simply by refusing to enter an order recognizing the amendment's adoption. This cannot have been the legislature's intent. We will not interpret section 9.005(b) in such a manner as to give the City Council the choice of deciding when, or indeed if, a charter amendment that has been passed by a majority of the voters becomes effective. The task of determining whether an amendment that has been adopted by majority vote violates the city charter or other existing law belongs, as it must in a three-branch government, to the courts (the judiciary)—not the City Coun-

cil (the legislative branch) or the Mayor (the executive branch).

As stated in our discussion of the Mayor's duty in section 9.007, the City's briefing indicates that it does not intend to enter an order declaring that proposition 2 has been adopted by the voters. As such, relators have shown a demand and a refusal to perform.

Accordingly, we conclude that section 9.005(b) imposes a nondiscretionary duty for the City Council to enter an order in the city records declaring that all three propositions passed by the city's voters at the November 2, 1004 election have been adopted.

## CONCLUSION

We hold that section 6.007 of the Local Government Code imposes a nondiscretionary duty on the Mayor to certify to the secretary of state an authenticated copy of propositions 1, 2, and 3 under the City of Houston's seal showing their approval by the voters of the municipality. Accordingly, we grant the requested relief in cause number 01–04–01276–CV. We are confident that the Mayor will perform this duty as required. A writ of mandamus will issue to compel his performance only if he has not complied within 30 days of the date of this opinion.

We likewise hold that section 6.005(b) of the Local Government Code imposes a nondiscretionary duty on the City Council to enter an order in the records of the City of Houston declaring that propositions 1, 2, and 3 have been adopted. Accordingly, we grant the requested relief in cause number 01–05–00374–CV. We are also confident that the City Council will perform this duty as required. A writ of mandamus will issue to compel the City Council's performance only if it has not complied within 30 days of the date of this opinion.

We express no opinion as to whether propositions 1 and 2 are inconsistent or whether the language of the proposition 1 and the City Charter requires that proposition 2 be declared invalid.