**Opinion issued January 27, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-01167-CV

_____

**THE BOARD OF TRUSTEES OF THE HOUSTON FIREFIGHTERS'**
**RELIEF AND RETIREMENT FUND, Appellant**

**V.**

**THE CITY OF HOUSTON, TEXAS, Appellee**

On Appeal from the 189th District Court
Harris County, Texas
Trial Court Case No. 2012-28760

**O P I N I O N**[1]

---

[1]  The Honorable Jim Sharp, a former justice on this court, was on the panel and present for argument, but having left office on December 31, 2014, did not participate in this decision. Thus, the two remaining justices may decide the case if they agree on a judgment. *See* TEX. R. APP. P. 41.1(a), (b).

This appeal concerns the construction of Texas Government Code section 802.1012. *See* TEX. GOV'T CODE ANN. § 802.1012 (West 2012). This section became effective September 1, 2007 and governs audits of the actuarial valuations, studies, and reports of certain public retirement systems, including appellant, the Board of Trustees of the Houston Firefighters' Relief and Retirement Fund ("the Board"). The City of Houston filed a petition for writ of mandamus and a motion for summary judgment in the trial court seeking to compel the Board to disclose information pursuant to section 802.1012. The Board filed a cross-motion for summary judgment.

The trial court granted the City's motion and issued a writ of mandamus against the Board but suspended enforcement of its order. The Board appeals the grant of the City's motion for summary judgment, issuance of the writ of mandamus, and the denial of its cross-motion for summary judgment. We reverse and render judgment in favor of the Board.

**Background**

**A.    Government code provisions**

The Board is the governing body of the Houston Firefighters' Relief and Retirement Fund, the public retirement system for the City's firefighters.[2] The

---

[2]    Section 802.001(2) defines the "[g]overning body of a public retirement system" as "the board of trustees . . . that has the fiduciary responsibility for assets of the

Board is statutorily required to employ an actuary, and the actuary is required to make a valuation of the system's assets and liabilities at least once every three years. TEX. GOV'T CODE ANN. § 802.101(a) (West 2012). An actuarial valuation requires economic and demographic assumptions in order to estimate future liabilities. Based on this valuation, the actuary makes recommendations to the Board to ensure the actuarial soundness of the system. *See id.* § 802.101(b) (West 2012).

In addition to the periodic audits by the Fund's auditor, a second audit is required by an independent auditor hired by the City, which makes retirement contributions to the Fund. Section 802.1012 requires that "[e]very five years, the actuarial valuations, studies, and reports . . . most recently prepared for the retirement system . . . must be audited by an independent actuary who . . . is engaged for the purpose of the audit by the governmental entity." *Id.* § 802.1012(c). Following completion of the audit, the independent actuary prepares a report, and the governmental entity ultimately submits a copy of the final audit report to the Board and the State Pension Review Board ("the PRB").

---

system and has the duties of overseeing the investment and expenditure of funds of the system and the administration of benefits of the system." TEX. GOV'T CODE ANN. § 802.001(2) (West Supp. 2014). Under Texas Civil Statutes article 6243e.2(1), "Board" means "the board of trustees of a firefighters' relief and retirement fund." TEX. REV. CIV. STAT. ANN. art. 6243e.2(1) (West 2010).

*See id.* § 802.1012(f)–(j). The City's ability to perform an appropriate audit is an important safeguard to the public.

## B.    Parties' dispute

The City's auditor first conducted an audit in 2008 based upon the Fund's valuations, studies, and reports as of July 1, 2007.[3] In November 2011, Houston Mayor Annise Parker sent a letter to the Board Chairman stating that the City is required, under section 802.1012, to have an independent audit performed "at least every 5 years." The Mayor advised that the City had engaged an actuarial firm "to conduct a more thorough audit by replicating the . . . results of the July 1, 2011 actuarial valuations" and requested the Board to provide detailed information relative to the July 1, 2011 valuations.[4]

Two months later, the Board responded that section 802.1012's statutorily specified five-year interval had yet to elapse. The Board further objected to the level of information requested by the Mayor, stating that it did not consider a

---

[3]    There are different levels of actuarial audits. A "high-level" audit evaluates the most recent available actuarial valuation and other related studies and reports without access to the detailed employee census data underlying the valuation. A "replication" audit, on the other hand, is a comprehensive and detailed independent actuarial valuation utilizing the same census data, assumptions, and actuarial methods used by the plan actuary. This was a high-level actuarial audit.

[4]    While the Mayor requested specific categories of census information, she stated that in order to protect members' identity, the data should not include the individual's name, Social Security number, employee number, or member number, but instead a unique record identification number assigned by the actuary.

"replication audit" to be the usual and customary practice of audits performed by Texas municipalities.

Addressing concerns expressed by the Board regarding the confidentiality of member data, the Mayor sent a letter in February 2012 advising the Board that the City had amended its request and now sought group rather than individual data. Mayor Parker also stated that the timing of the City's request to audit the July 1, 2011 actuarial valuation was "in compliance with the law's timing requirement, as interpreted by the [PRB]." The Board, however, continued to assert that the next audit pursuant to section 802.1012 was required to commence no sooner than five years from the 2008 audit and, therefore, the City's request was premature.

In May 2012, pursuant to Government Code section 802.003,[5] the City filed an original petition for writ of mandamus to compel the Board "to provide to Houston all underlying documents, information, and/or electronic data for all the Fund's valuations, studies, and reports for each year since at least 2000." The

---

[5] Section 802.003 provides, in relevant part:

> (a)  Except as provided by Subsection (b), if the governing body of a public retirement system fails or refuses to comply with a requirement of this chapter that applies to it, a person residing in the political subdivision in which the members of the governing body are officers may file a motion, petition, or other appropriate pleading in a district court having jurisdiction in a county in which the political subdivision is located in whole or in part, for a writ of mandamus to compel the governing body to comply with the applicable requirement.

TEX. GOV'T CODE ANN. § 802.003(a) (West 2012).

5

information sought included "census data," i.e., individual pension member and survivor information such as gender, date of birth, hire date, compensation, pension contributions, and pension account balances.[6] Specifically, the City alleged that "the Board has a ministerial duty to release the underlying materials for the Fund's valuations, studies, reports, and audits to Houston" and, therefore, "has no discretion to refuse to comply with Houston's request for these materials."

Shortly thereafter, the City moved for summary judgment, arguing that it was entitled to mandamus relief because (1) section 802.1012 imposes a nondiscretionary duty to disclose the requested materials, (2) the City had requested the Board to do so, and (3) the Board had refused. The Board responded to the City's motion and filed a cross-motion for summary judgment, in which it argued that (1) the statute creates no ministerial duty for which mandamus relief is available; (2) the Board neither failed nor refused to comply with the statute; and (3) the City failed to comply with its own statutory obligations in various ways before beginning the audit, including that it retained an auditor who assisted the City with lobbying activities instead of the required "independent auditor," had not signed a confidentiality agreement (and neither had its retained actuary), and failed to meet with the Fund's manager to discuss the assumptions for the audit. The City

---

[6] While Mayor Parker's letters to the Board limited the scope of the materials sought to the "information related to the July 1, 2011 actuarial valuations," the City's petition did not.

6

amended its summary-judgment motion, and various responses and replies were exchanged by the parties.

After several hearings, the trial court granted the City's summary-judgment motion and denied the Board's cross-motion. It further ordered that

> a writ of mandamus issue directing the Board to provide and disclose to the independent actuary . . . all information and/or electronic data (including all "census data") requested by the independent actuary in the audit pursuant to section 802.1012(c) of the actuarial valuations, studies, and reports most recently prepared for the Fund pursuant to Chapter 802.

The trial court subsequently suspended enforcement of its summary judgment and mandamus order pending appeal.[7]

## The Duty at Issue Was Not Ministerial, Precluding Summary Judgment and Mandamus for the City

The Board argues that the trial court erred in granting the City summary judgment and issuing a writ of mandamus because (1) the City never established as a matter of law that the Board failed to perform a ministerial duty; (2) no effective demand for performance was made or refused; and (3) the preconditions for an audit under section 802.1012 have yet to occur. The Board also argues that the trial court erred by denying its cross-motion for summary judgment because (1) the statute creates no ministerial duty for which mandamus is available; (2) the Board

---

[7] By order dated May 13, 2013, this Court granted the Board's motion to continue suspension of enforcement of the trial court's judgment and order of mandamus pending the resolution of this appeal.

7

neither failed nor refused to comply with the statute; and (3) the City failed to comply with its own statutory obligations before beginning an audit.

## A.   Standard of review

We review a trial court's grant of summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Rule of Civil Procedure 166a(c) provides that a movant is entitled to summary judgment if the summary judgment evidence establishes that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law on those issues expressly set out in the motion or in an answer or in any other response." TEX. R. CIV. P. 166a(c); *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). When, as here, both parties move for summary judgment, each bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). The reviewing court should render the judgment that the trial court should have rendered or reverse and remand if neither party has met its summary judgment burden. *Id.*

## B.   Requirements for mandamus relief

An original proceeding in a trial court for a writ of mandamus is a civil action subject to trial and appeal on substantive law issues and rules of procedure as any other civil action. *See Anderson v. City of Seven Points*, 806 S.W.2d 791,

8

792 n.1 (Tex. 1991). Texas law generally authorizes mandamus relief to compel a public official or body to either perform a ministerial duty or to correct a clear abuse of discretion. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). The movant typically must establish that (1) a public official or body failed to perform a ministerial duty or committed a clear abuse of discretion and (2) there is no adequate remedy at law. *See Republican Party v. Dietz*, 940 S.W.2d 86, 88 (Tex. 1997) (orig. proceeding). However, when mandamus relief is provided by statute, the petitioner is relieved of the burden to prove that there is no adequate remedy at law. *See In re Transcon. Realty Investors, Inc.*, 271 S.W.3d 270, 271 (Tex. 2008) (per curiam). Here, section 802.003 of the Government Code authorizes trial courts to grant mandamus relief when the governing body of a public retirement system fails or refuses to comply with statutory requirements. TEX. GOV'T CODE ANN. § 802.003. Accordingly, to obtain mandamus relief, the City was required to establish that a public official or body failed to perform a ministerial duty or committed a clear abuse of discretion.

An act is ministerial, or nondiscretionary, when "the law clearly spells out the duty to be performed with sufficient certainty that nothing is left to the exercise of discretion." *See Anderson*, 806 S.W.2d at 793. A writ of mandamus may issue when the facts and circumstances dictate only one rational decision under unequivocal, well-settled, and clearly controlling legal principles. *In re Amos*, 397

9

S.W.3d 309, 312 (Tex. App.—Dallas 2013, orig. proceeding); *In re Dacus*, 337 S.W.3d 501, 504 (Tex. App.—Fort Worth 2011, orig. proceeding). When the public official or body has a legal duty to perform a nondiscretionary act, a demand for performance of that act has been made, and the official or body refuses to perform, a party is entitled to mandamus relief against the official or body. *See id.*; *Sheppard v. Thomas*, 101 S.W.3d 577, 581 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). Whether a statute creates a ministerial duty is a question of law. *Associated Press v. Cook*, 17 S.W.3d 447, 461 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

## C.     Section 802.1012 requires non-ministerial action by the Board

While conceding that the statute "does not expressly say so," the City contends that the Board has a nondiscretionary duty to disclose any materials that an independent actuary requests in connection with an audit under section 802.1012(c). The Board maintains that, while section 802.1012 may imply a duty on its part to cooperate with an independent actuary and produce information reasonably necessary for conducting an audit, it does not impose a ministerial duty to provide all materials requested by the City because the statute does not define what are reasonably necessary documents for an independent actuarial audit.[8]

---

[8]     In addition to compelling the performance of a nondiscretionary duty, mandamus may be issued to correct a clear abuse of discretion. *See Anderson*, 806 S.W.2d at

10

Section 802.1012, entitled "Audits of Actuarial Valuations, Studies, and Reports," provides, in relevant part:

> (c) Every five years, the actuarial valuations, studies, and reports of a public retirement system most recently prepared for the retirement system as required by Section 802.101 . . . must be audited by an independent actuary who:
>
> (1) is engaged for the purpose of the audit by the governmental entity[.]
>
> . . .
>
> (d) Before beginning an audit under this section, the governmental entity and the independent actuary must agree in writing to maintain the confidentiality of any nonpublic information provided by the public retirement system for the audit.
>
> (e) Before beginning an audit under this section, the independent actuary must meet with the manager of the pension fund for the public retirement system to discuss the appropriate assumptions to use in conducting the audit.

TEX. GOV'T CODE ANN. § 802.1012. Taken together, these three subsections require that (1) the materials underlying the Fund's valuations, studies, and reports most recently prepared for the Fund for its own section 802.101 valuation be audited every five years by an independent actuary hired by the City for the purpose of conducting the audit, (2) before beginning the audit, the independent

---

793. The Board argues, "Unreasonable negotiating positions might subject the Board to mandamus under an abuse of discretion standard, *but* that is *not* the City's case before this Court." We do not determine whether mandamus relief might be appropriate for a clear abuse of discretion because that issue was not presented to the trial court.

actuary and the City must agree in writing to maintain the confidentiality of any nonpublic information provided by the Fund, and (3) the independent actuary must meet with the Fund's manager to discuss assumptions to be used in the audit.

It is undisputed that the language of section 802.1012 does not *expressly* require the Board to disclose the underlying materials requested by the City.[9] The City, however, argues that "where a statute expressly commands or grants anything, courts must construe it to also impliedly authorize whatever is necessary for executing its commands or whatever is indispensable to the enjoyment or exercise of its grant, and to prevent frustration of its purpose and function." *See Warner v. Glass*, 135 S.W.3d 681, 684–85 (Tex. 2004). Thus, the City reasons, "the only reasonable construction of Chapter 802 is that it necessarily imposes a duty on the Board to disclose the underlying materials for the Fund's valuations, studies, and reports that the City must have audited."

The Board acknowledges that section 802.1012 implies a duty to cooperate with the independent actuary but disputes that such an obligation is "ministerial."

---

[9]  In fact, section 802.1012's requirements are not directed to public retirement systems but rather to independent actuaries and the governmental entity that employs the system's members. *See* TEX. GOV'T CODE ANN. § 802.1012(c)–(j) (stating that actuary and governmental entity "must" or "shall" take specified actions). Section 802.1012 significantly differs from every other subsection in Chapter 802, each of which imposes administrative requirements on public retirement systems. *See, e.g.*, TEX. GOV'T CODE ANN. §§ 802.101–.102, 802.1024–.1025, 802.103–.107 (West 2012 & Supp. 2014) (stating that public retirement systems "shall" take specified actions).

12

The Board contends that, because section 802.1012's language does not preclude it from exercising its discretionary authority to negotiate the terms and scope of the production and the protections to be afforded its members' confidential information, the Board's disclosures cannot be merely "ministerial." Further, the Board is statutorily charged with protecting the confidentiality of the Fund members' and beneficiaries' non-public information. *See* TEX. REV. CIV. STAT. ANN. art. 6243e.2(1) § 17 (West 2010); TEX. GOV'T CODE ANN. § 552.0038(i) ("To the extent of a conflict . . . the prevailing provision is the provision that provides the greater substantive and procedural protections for the privacy of information concerning that individual . . . ."). Thus, the Board contends, it has some discretion in determining the scope of the disclosure.

The City relies on this Court's decision in *In re Robinson*, 175 S.W.3d 824 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding), for authority that the Board has a ministerial duty to disclose whatever information the auditor requests. In *Robinson*, registered voters sought writs of mandamus to compel the Houston City Council and the Mayor to enter an order declaring the adoption of three propositions as new amendments to the city charter and to certify the new amendments to the Texas Secretary of State. *Id.* at 826–27. After concluding that

the word "shall" in Local Government Code section 9.007[10] imposed a nondiscretionary duty on the mayor to certify the amendments to the secretary of state, the Court considered whether section 9.005(b)[11] imposed a nondiscretionary duty on the city council to enter an order declaring the adoption of the three propositions passed by voters. *Id.* at 830–31. The *Robinson* court noted that, while section 9.005(b) does not contain mandatory language, it "concerns when an amendment to the city charter becomes effective." *Id.* at 832 ("A charter amendment 'does not take effect until the governing body of the municipality

---

[10] Section 9.007 of the Local Government Code, entitled "Certification of Charter or Amendment," provides, in relevant part:

> (a) As soon as practicable after a municipality adopts a charter or charter amendment, the mayor or chief executive officer of the municipality *shall certify* to the secretary of state an authenticated copy of the charter or amendment under the municipality's seal showing the approval by the voters of the municipality.

TEX. LOC. GOV'T CODE ANN. § 9.007(a) (West 2008) (emphasis added).

[11] Section 9.005, entitled "Adoption of Charter or Amendment," provides as follows:

> (a) A proposed charter for a municipality or a proposed amendment to a municipality's charter is adopted if it is approved by a majority of the qualified voters of the municipality who vote at an election held for that purpose.
>
> (b) A charter or an amendment does not take effect until *the governing body of the municipality enters an order* in the records of the municipality declaring that the charter or amendment is adopted.

TEX. LOC. GOV'T CODE ANN. § 9.005(a), (b) (West 2008) (emphasis added).

14

enters an order in the records . . . .'") (quoting TEX. LOC. GOV'T CODE § 9.005(b) (West 1999)). After reviewing the legislative intent, the Court concluded that section 9.005(b) did impose a nondiscretionary duty on the city council to declare the propositions adopted. *See id*. The City submits that the issue of statutory construction in *Robinson* and that presented here are sufficiently similar to conclude that the statute imposes a nondiscretionary duty on the Board. The City's reliance on *Robinson* is misplaced.

Unlike *Robinson*, neither the language of section 802.1012(c) nor the legislative intent prescribe or define a specific duty to act and, to the extent it implies a duty, it fails to do so with the "precision" and "certainty" necessary to make the action ministerial. *See Heard*, 603 S.W.2d at 832 ("ministerial duty" exists when law defines duty "'with such precision and certainty as to leave nothing to the exercise of discretion or judgment.'") (quoting *Smith*, 5 Tex. at 479). Whether the scope of the information requested by the City's actuary extends beyond information "reasonably necessary" for the purposes of the audit is a question of degree. It is not specified in the statute with sufficient detail to remove all exercise of discretion by the Board.

In his affidavit, Mickey McDaniel, the actuary engaged by the City, explained that there are different levels of actuarial audits and that each level requires different information. While a "replication-level" audit requires the census

15

data used by the system's actuary, "a high-level audit" involves "evaluation of the most recent available actuarial valuation and other related studies and reports without access to the detailed employee census data [] underlying them." McDaniel stated that, due to time constraints, the City only performed a "high-level review audit" of the Fund's actuarial valuations in 2008 and, therefore, did not seek access to participant census data. But for its second audit, the City requested information to conduct a "replication-level" audit. The differences between the two audits suggest that the statute permits the actuary and the public retirement system discretion to negotiate the scope of the audit.

Further, assuming that section 802.1012 requires public retirement systems to disclose some participant information, it does not require a replication-level audit, which would require the disclosure of the individual participants' personal data reviewed by the Board's auditor. Because section 802.1012 does not direct, with precision and certainty, that such information be provided, some level of discretion exists.

Finally, the City's reliance on section 802.1012(d) to contend that all requested information be produced is also misplaced. Section 802.1012(d) requires the City and the independent actuary to "agree in writing to maintain the confidentiality of any nonpublic information provided by the [Fund] for the audit." *See* TEX. GOV'T CODE ANN. § 802.1012(d). This provision addresses the issue of

16

confidentiality (i.e., prohibiting unauthorized disclosure to third parties) rather than the scope of the document production. Contrary to the City's interpretation, subsection (d) is not evidence of a duty to disclose information to the auditor; rather, it merely provides that the City and its retained auditor must agree in writing to keep any produced information confidential. To ensure that such information will remain protected, the relevant parties must enter into a confidentiality agreement before the disclosure of the information. The terms of a confidentiality agreement must be "agree[d]" upon, which suggests an exercise of judgment, rather than a clear and precise directive. Without such an agreement, the Board's duty to disclose is not invoked. *Hawkins v. Cmty. Health Choice, Inc.*, 127 S.W.3d 322, 327 (Tex. App.—Austin 2004, no pet.) ("'[M]andamus will not issue to enforce a right which is contingent or incomplete by reason of condition precedent which is still to be performed . . . .'") (quoting *Tex. Mexican R.R. Co. v. Jarvis*, 15 S.W. 1089 (Tex. 1891)).

Accordingly, we conclude that the summary judgment evidence does not demonstrate, as a matter of law, that the Board has a ministerial (i.e., nondiscretionary) duty "to provide and disclose to the independent actuary . . . all information and/or electronic data (including all 'census data') requested by the independent actuary" for a replication-level audit, as stated in the trial court's December 21, 2012 order. *See Anderson*, 806 S.W.2d at 793. Having failed to

17

establish this element of its claim for its requested mandamus relief, the City was not entitled to summary judgment. *See Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). Because the Board disproved an essential element of the City's cause of action, i.e., that the Board has a legal duty to perform a ministerial act under section 802.1012, it was entitled to summary judgment on the City's claim.

## Conclusion

We reverse the trial court's December 21, 2012 order (1) granting the City's amended motion for summary judgment and issuing a writ of mandamus and (2) denying the Board's cross-motion for summary judgment, and we render judgment in favor of the Board.

Harvey Brown
Justice

Panel consists of Justices Jennings and Brown.