**Affirmed and Majority and Dissenting Opinions filed October 12, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00959-CV

## BRUCE R. HOTZE, Appellant

### V.

## SYLVESTER TURNER, MAYOR, AND THE CITY OF HOUSTON, Appellees

On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2014-19507

## DISSENTING OPINION

Appellant's lawsuit raises an important question regarding voter-initiated amendments to a home-rule municipality's charter. Under the Local Government Code, a charter amendment approved by a majority of the municipality's qualified voters is "adopted," and the amendment takes effect when declared adopted by the municipality. When a voter-initiated charter amendment has been so approved and so adopted—and declared as such—may a home-rule municipality nevertheless

deny effectiveness to that amendment if it did not meet an additional city-imposed vote threshold not otherwise required by statute?  Houston voters approved the charter amendments at issue in 2004, and this dispute's meandering but well-documented path through the court system,[1] having so far taken seventeen years, has now yielded an appellate court answer.  But I disagree with the answer.

## A.    Charter Amendment Process and the Provisions at Issue

The Texas Constitution authorizes cities of a certain population to adopt city charters, subject to such limitations as the Legislature may prescribe.  Tex. Const. art. XI, § 5.  One such prescription applicable to these "home-rule" cities, which include the City of Houston, relates to amending an existing charter.  Under the Local Government Code, a home-rule city charter may be amended either on the city's motion or by citizen-voter initiative.  *See* Tex. Loc. Gov't Code § 9.004(a).  When citizens exercise their power to seek amendment, they do so by submitting a petition signed by the requisite number of qualified municipal voters.  *See id.*  When presented with a conforming petition, the city's governing body "shall" submit the proposed charter amendment to the voters for their approval at an election.  *Id.*; *see* Houston, Tex., City Charter art. VII-b (effective 1913) (amended 1991).  The proposed charter amendment is "adopted" if it is approved by majority vote.  *See* Tex. Loc. Gov't Code § 9.005(a).  "This form of direct democracy through 'the power of initiative and referendum, as provided for in the city's charter, is the exercise by the people of a power reserved to them, and not the

---

[1] I refer the reader to *In re Robinson*, 175 S.W.3d 824 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding [mand. granted]); *White v. Robinson*, 260 S.W.3d 463 (Tex. App.—Houston [14th Dist.] 2008), *vacated sub. nom. Robinson v. Parker*, 353 S.W.3d 753 (Tex. 2011); *In re Hotze*, No. 14-08-00421-CV, 2008 WL 4380228 (Tex. App.—Houston [14th Dist.] July 10, 2008, orig. proceeding) (mem. op.); *Hotze v. White*, No. 01-08-00016-CV, 2010 WL 1493115 (Tex. App.—Houston [1st Dist.] Apr. 15, 2010, pet. denied) (mem. op.); and *Turner v. Robinson*, 534 S.W.3d 115 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

exercise of a right granted.'" *Turner*, 534 S.W.3d at 130 (Busby, J., concurring) (quoting *Taxpayers' Ass'n of Harris Cty. v. City of Houston*, 105 S.W.2d 655, 657 (Tex. 1937)).

Before us is the validity and effectiveness of a city charter amendment first proposed by voter-initiated petition, placed on the ballot for approval in November 2004, and approved by a majority of those total voters who cast a vote either for or against that particular amendment. Appellant Bruce R. Hotze, a Houston citizen, participated in the effort to place the proposed charter amendment on the ballot. *Robinson*, 353 S.W.3d at 754. He signed the petition and voted in favor of the amendment. *Id.*

The proposed charter amendment was included in a 2004 City of Houston election ordinance under the heading, "Proposition No. 2." It related to "Limits on All Combined City Revenues." It is known by the litigants (and by our appellate courts in Houston) simply as "Proposition 2." Proposition 2 proposed a measure to amend the city charter by adding "a new Section 7 to Article VI-a." The ordinance set forth the proposed amendment's full text. A recitation of its complete language is unnecessary, but the following summary was included on the ballot:

> The City Charter of the City of Houston shall be amended to require voter approval before the City may increase total revenues from all sources by more than the combined rates of inflation and population, without requiring any limit of any specific revenue source, including water and sewer revenues, property taxes, sales taxes, fees paid by utilities and developers, user fees, or any other sources of revenues.

Also included in the 2004 election ordinance was a charter amendment proposed on the City's motion. The City's proposed amendment related to "Limits on Annual Increases in City Property Taxes and Utility Rates." The amendment's full text was included in the election ordinance under the heading, "Proposition

3

No. 1." If adopted, the City's proposed amendment would amend the city charter by "amending the first paragraph of Section 1 of Article III and adding a new Section 20 to Article IX." The City's proposed amendment would have granted the City "full authority to assess and collect any and all revenues of the city without limitation, except as to ad valorem taxes and water and sewer rates." The City included the following summary of its proposed charter amendment on the ballot:

> The Charter of the City of Houston shall be amended to require voter approval before property tax revenues may be increased in any future fiscal year above a limit measured by the lesser of 4.5% or the cumulative combined rates of inflation and population growth. Water and sewer rates would not increase more than the cumulative combined rates of inflation and population growth without prior voter approval. The Charter Amendment also requires minimum annual increases of 10% in the senior and disabled homestead property tax exemptions through the 2008 tax year.

The election ordinance also contained what this court has referred to as a "poison pill" provision, which the City contends is part of Proposition 1's text. *See Turner*, 534 S.W.3d at 119. The poison pill provision stated:

> If another proposition for a Charter amendment relating to limitations on increases in City revenues is approved at the same election at which this proposition [Proposition 1] is also approved, and if this proposition [Proposition 1] receives the higher number of favorable votes, then this proposition [Proposition 1] shall prevail and the other shall not become effective.

Given its language, the poison pill provision appears designed to allow the City to enforce only its proposed charter amendment contained in Proposition 1 so long as Proposition 1 received more votes than Proposition 2, even if the

amendments contained in both Proposition 1 and Proposition 2 were adopted by majority vote.[2]

Viewing the election ordinance as a whole, I construe "Proposition 1" as consisting of two discrete parts: (1) the City's proposed charter amendments to Articles III and IX; and (2) the poison pill provision. I construe "Proposition 2" as consisting solely of the voter-initiated charter amendment to Article VI-a.

Proposition 1 and Proposition 2 passed with a majority of votes cast on each proposition. The charter amendments contained in each proposition, therefore, were "adopted" on November 2, 2004. *See* Tex. Loc. Gov't Code § 9.004(a); *In re Robinson*, 175 S.W.3d at 829.

Although both Proposition 1 and Proposition 2 passed, Proposition 1 received more favorable votes than Proposition 2. This fact brings us to the disagreement at hand. After the election, the City determined that Proposition 2 is not valid and therefore not enforceable. *See Robinson*, 353 S.W.3d at 754; *Turner*, 534 S.W.3d at 127. The City based its position on the poison pill provision and on a separate section of the city charter applicable to "inconsistent" charter amendments.[3] According to the City, the respective charter amendments in Proposition 1 and Proposition 2 are "alternatives" to limiting city revenues. The November 2004 ballot, the City urges, presented to voters the opportunity to choose between the City's "single unified plan" on the one hand, and the voter-initiated "single unified plan" on the other.[4] The City insists that the charter

---

[2] I will presume the poison pill provision was included in the election ordinance as part of Proposition 1. Interestingly, no similar poison pill provision appeared at the end of Proposition 2's text in the election ordinance.

[3] *See* City Charter, art. IX, § 19. I comment on this part of the City's argument below.

[4] The public was made aware of its opportunity to consider each "plan" as alternatives, the City asserts, by being so informed through the election ordinance and other means.

5

amendments in both propositions are incapable of simultaneous administration and are irreconcilably inconsistent. The City has, however, enacted an ordinance declaring that the charter amendments reflected in both propositions "are adopted" (the "Adoption Ordinance.") *See* Tex. Local Gov't Code § 9.005(b) ("A charter or an amendment does not take effect until the governing body of the municipality enters an order in the records of the municipality declaring that the charter or amendment is adopted.").[5] After the City's passage of the Adoption Ordinance, each charter amendment "became part of the Houston City Charter." *Robinson*, 353 S.W.3d at 755; *Turner*, 534 S.W.3d at 121; Tex. Loc. Gov't Code § 9.005(b). In fact, today, the City's amendments to Articles III and IX proposed in Proposition 1, and the voter-initiated amendments to Article VI-a proposed in Proposition 2, are included in the city charter.[6]

## B. The Arguments

Hotze is one of three plaintiffs who sued the City requesting declaratory and injunctive relief regarding the validity of, and the City's prospective compliance with, the charter amendments included in both propositions. Among other contentions, Hotze claimed that the charter amendment in Proposition 2 is valid notwithstanding the poison pill provision because the poison pill provision is itself invalid. Hotze's argument rests largely, though not exclusively, on article XI, section 5 of the Texas Constitution and Local Government Code section 9.005(a), both applicable to home-rule cities. As our state constitution makes clear, the

---

Presumably, part of that educational effort included the language of the poison pill provision itself.

[5] The City and its Mayor resisted even this ministerial act until compelled by mandamus. *See In re Robinson*, 175 S.W.3d at 830, 832.

[6] The City invites us to take judicial notice of the city charter, and I accept that invitation. *See* City Charter, *available at* https://library.municode.com/tx/houston/codes/code_of_ordinances?nodeId=CH.

amendment of home-rule city charters is subject to such limitations the Legislature prescribes, and "no . . . ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." Tex. Const. art. XI, § 5.

Local Government Code section 9.005 provides that a proposed amendment to a municipality's charter is adopted if it is approved by a majority vote. *See* Tex. Loc. Gov't Code § 9.005(a). Hotze contends that the poison pill provision is constitutionally infirm because it conflicts with section 9.005(a). *See* Tex. Const. art. XI, § 5. For that reason, Hotze argues that the City may not rely on the poison pill provision to deny Proposition 2 the force of law to which it is entitled by virtue of its adoption.

For its part, the City has maintained that only the charter amendments in Proposition 1 shall be effective and that those in Proposition 2 are invalid.[7] Ruling on competing summary judgment motions, the trial court agreed with the City and declared the charter amendments in Proposition 2 ineffective because of the poison pill provision. Principally, it is this ruling that concerns us today and on which I part ways with the majority.

## C.    Discussion

In part of his third issue, Hotze challenges the trial court's ruling that the charter amendment in Proposition 2 is ineffective because of the poison pill provision. The question is whether the poison pill provision is inconsistent with section 9.005(a). I would hold that it is. My colleagues in the majority conclude

---

[7] Contrary to the majority's assertion, the "Adoption Ordinance" does not state that "Proposition 1 was legally binding and that Proposition 2 would not be enforced." Maj. Op. at 3. That is a fair summary of the City's practical position; but the Adoption Ordinance itself declares adoption of the charter amendments proposed in both propositions without reference to whether the City intended to treat those in Proposition 2 as a dead letter.

7

otherwise, stating, "because the primacy clause did not prevent adoption of Proposition 2 as part of the city charter, the primacy clause does not violate section 9.005(a)." In my view, the majority misconstrues or misapprehends section 9.005(a)'s directives by overlooking the legal force attaching to a validly adopted charter amendment. As a result, the majority erroneously permits the City to impose requirements in addition to those in the Local Government Code before a voter-initiated charter amendment can become law.[8]

The City of Houston is a home-rule city, deriving its power from article XI, section 5 of the Texas Constitution. Tex. Const. art. XI, § 5; *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013). Home-rule cities possess the full power of self-government and look to the Legislature not for grants of power, but only for limitations on their powers. *Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 643 (Tex. 1975) (citing *Forwood v. City of Taylor*, 214 S.W.2d 282 (Tex. 1948)). The present dispute turns on one such limitation: a home-rule city cannot enact an ordinance containing a provision inconsistent with Texas's constitution or general laws. *See* Tex. Const. art. XI, § 5(a); *see also BCCA Appeal Grp., Inc. v. City of Houston*, 496 S.W.3d 1, 7 (Tex. 2016). A home-rule city ordinance is thus unenforceable to the extent that it irreconcilably conflicts with a state statute. *See BCCA Appeal Grp.*, 496 S.W.3d at 7; *Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 491 (Tex. 1993). A general law and a city ordinance, however, "will not be held repugnant to each other if any other reasonable construction leaving both in effect can be reached." *City of Beaumont v. Fall*, 291 S.W. 202, 206 (Tex. 1927).

---

[8] I pause briefly to comment on a waiver argument the City advances. The City says Hotze abandoned his constitutional challenge to the poison pill provision in the trial court. By not explicitly addressing the argument, I presume the majority has rejected it. I agree, as Hotze raised the issue in, among other places, his motion for summary judgment.

Though article XI, section 5 is plain enough, other constitutional provisions similarly circumscribe the "power of suspending laws in this State" to the Legislature alone. Tex. Const. art. I, § 28; *City of Baytown v. Angel*, 469 S.W.2d 923, 925 (Tex. App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.). As this court observed in *City of Baytown*, the supreme court has interpreted article I, section 28 as "applicable to municipal ordinances conflicting with state statutes." *Angel*, 469 S.W.2d at 925 (citing *Brown Cracker & Candy Co. v. City of Dallas*, 137 S.W. 342, 343 (Tex. 1911)).

Local Government Code section 9.005 states:

> (a) A proposed charter for a municipality or a proposed amendment to a municipality's charter is adopted if it is approved by a majority of the qualified voters of the municipality who vote at an election held for that purpose.

Tex. Loc. Gov't Code § 9.005(a). The parties do not appear to contest this section's meaning. Whether a charter amendment has been "adopted" is determined by examining the votes cast for or against it, irrespective of the total number of votes that may have been cast in the election. *In re Robinson*, 175 S.W.3d at 827 n.1; *Ladd v. Yett*, 273 S.W. 1006, 1011 (Tex. App.—Austin 1925, writ dism'd w.o.j.).

The respective charter amendments proposed in Proposition 1 and Proposition 2 were adopted on November 2, 2004, and became "effective" May 4, 2005, when the City declared by ordinance both propositions adopted. *See* Tex. Loc. Gov't Code § 9.005(a), (b). Consequently, both charter amendments became part of the city charter and thus carry the force of law. *See* Tex. Elec. Code § 1.005(10) ("'Law' means a constitution, statute, *city charter*, or city ordinance.") (emphasis added); *In re Petricek*, ---S.W.3d---, 2021 WL 3909908, at *3 (Tex. Sept. 1, 2021) (orig. proceeding). Any part of any municipal ordinance purporting

9

to deny effectiveness to a charter amendment that has been approved by a majority of the municipality's qualified voters, and hence adopted, is unenforceable. Tex. Const. art. XI, § 5; *see Minella v. City of San Antonio*, 437 F.3d 438, 440 (5th Cir. 2005) (citing *Dallas Merchant's*, 852 S.W.2d at 491).

The poison pill provision is contained in a municipal ordinance. It purports to deny effectiveness to charter amendments reflected in Proposition 2, adopted by a majority of qualified Houston voters, and now effective as part of the city charter. If the poison pill provision were allowed to stand, the result would make ineffective that which the Legislature has declared effective by operation of Local Government Code section 9.005(a). Because the poison pill provision denies effectiveness to a home-rule city charter amendment that has been adopted and has become "law," it cannot be read in harmony with section 9.005(a). Thus, the poison pill provision is unenforceable and must yield. *See* Tex. Const. art. XI, § 5 ("no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State"); *City of Wink v. Griffith Amusement Co.*, 100 S.W.2d 695, 698 (Tex. 1936) ("The rule is definitely established . . . that ordinances in conflict with the general or state law are void."); *City of Cleveland v. Keep Cleveland Safe*, 500 S.W.3d 438, 448 (Tex. App.—Beaumont 2016, no pet.) (city charter "cannot be inconsistent with the Constitution of the State and general laws of the State"); *City of Anahuac v. Morris*, 484 S.W.3d 176, 181 (Tex. App.— Houston [14th Dist.] 2015, pet. denied); *City of Wichita Falls v. Abell*, 566 S.W.3d 336, 339 (Tex. App.—Fort Worth 1978, writ ref'd n.r.e.); *see also* Tex. Att'y Gen. Op. GA-0433 (2006) ("[m]unicipal laws inconsistent with state law are void ab initio"). I would hold that the poison pill provision contained in the election

ordinance conflicts irreconcilably with section 9.005 and therefore is unconstitutional and void.

I reach this conclusion properly viewing Local Government Code chapter 9 as a limiting statute. Home-rule cities possess the full power of self-government and look to the Legislature only for limitations on their powers. *Lower Colo. River Auth.*, 523 S.W.2d at 643. Chapter 9 applies to the "amendment of a municipal charter by a municipality authorized to do so by Article XI, Section 5, of the Texas Constitution." Tex. Loc. Gov't Code § 9.001. In the home-rule context, the power of qualified voters to seek a charter amendment *independent* from the city's governing body enjoys express approbation. *Id.* § 9.004(a) ("The governing body *shall* submit a proposed charter amendment to the voters for their approval at an election if the submission is supported by a petition signed by a number of qualified voters of the municipality . . . .") (emphasis added). As the Legislature's use of the word "shall" denotes a "duty,"[9] section 9.004(a) clearly limits a municipality's power to interfere with voter-initiated charter amendments. According to the City, the poison pill provision precludes enforcement of the voter-adopted amendments to Article VI-a. Its understanding of the provision, however, is inconsistent with the Local Government Code.

The inconsistency between the poison pill provision and section 9.005(a) is even more apparent considering the Legislature's presumptive intent behind the Local Government Code. Tex. Gov't Code §§ 311.001, 311.021 (Code Construction Act). We presume, for example, a statute is effective in its entirety. *Id.* § 311.021(2). The poison pill provision, the City says, forecloses enforcement of the voter-initiated charter amendments in Proposition 2, despite their approval, adoption, and effectiveness under Local Government Code section 9.005(a) and

_____

[9] Tex. Gov't Code § 311.016(2).

11

the Adoption Ordinance. As the City would have it, the voters' adoption of the charter amendments contained in Proposition 2 under section 9.005(a) is meaningless. Thus, the poison pill provision, if applied, would deny completely section 9.005(a)'s intended effect and object. *See id.* § 311.023(1), (5).

Together with a presumption of effectiveness, we presume the Legislature's intended result is just, reasonable, and feasible of execution. *Id.* § 311.021(3), (4). The City's position, and the majority's holding, frustrate these goals. Section 9.004(a) reflects a special emphasis on voter-initiated charter amendments. Whether such a proposed amendment (or any proposed amendment) becomes law turns on—and *only* on—whether it receives a majority vote by those qualified municipal voters who vote either for or against the amendment. *See* Tex. Loc. Gov't Code § 9.005(a); *Ladd*, 273 S.W. at 1011.[10] A municipality's unilateral requirement that the proposed amendment, even if approved by majority vote, must *also* garner more votes than a "competing" or "alternative" charter amendment preferred by the city's governing body imposes an additional "approval" threshold extrinsic to, and inconsistent with, the Legislature's design. Suppose the proposed charter amendments in Proposition 1 and Proposition 2 passed with 90% approval, but Proposition 1 received 1,000,001 votes and Proposition 2 received only 1,000,000. According to the City's argument, the voter-initiated amendments in Proposition 2 would never become law despite the Legislature's contrary intent as exemplified in section 9.005 and despite overwhelming voter approval. The power of home-rule city voters to amend their charters is supposed to be feasible of execution; but, under the City's blueprint, a home-rule city's governing body could

---

[10] While an adopted charter amendment does not "take effect" until the city passes an ordinance declaring the amendment is adopted, *see* Tex. Loc. Gov't Code § 9.005(b), that action—which occurred here—is ministerial and may be compelled by mandamus. *In re Robinson*, 175 S.W.3d at 828.

attempt to substantially diminish that power, and ultimately defeat it through effective veto, by attaching "poison pills," "primacy clauses," or like provisions to its "alternative" proposed amendments, including ones that, like these, are not "irreconcilably or substantively inconsistent" with voter-proposed amendments.[11] *See Minella*, 437 F.3d at 441 (applying similar rationale to section 9.005(b)). When a city inserts such provisions into an election ordinance, the voter-initiated charter amendment election process potentially becomes a "vain proceeding" because any voter-proposed amendment approved by majority vote and adopted by the City would, contrary to section 9.005, never become law if it did not *also* receive more votes than some other measure proposed by the City and approved. *See In re Robinson*, 175 S.W.3d at 828 (citing *City of Dallas v. Dallas Consol. Elec. St. Ry. Co.*, 148 S.W. 292, 294 (Tex. 1912)). A home-rule city's governing body is not required to like every voter-initiated charter amendment, but it *is* required to present any such proposed amendment to the voters, and to implement the measure in accordance with valid election results, consistent with due process and state law. I would not interpret section 9.005(a) as affording the Houston City Council the opportunity to frustrate the voters' will by imposing other requirements designed to control whether a charter amendment that has been adopted by majority vote is denied the force of law. *See In re Robinson*, 175 S.W.3d at 831 (applying similar reasoning to section 9.005(b)). The majority errs by interpreting section 9.005(a) otherwise.

To be clear, my view of the poison pill provision's inconsistency with section 9.005(a) would be the same even if the voter-initiated amendments in Proposition 2 received more votes than the City amendments in Proposition 1, so

---

[11] I agree with the trial court that the proposed amendments in Proposition 1 and Proposition 2 are not inconsistent, and thus Article IX, Section 19, of the city charter is not invoked. For that reason, I would not address the City's issue raised in its cross-appeal.

13

long as both propositions passed by majority vote. By its terms, the poison pill provision does not apply unless both proposed charter amendments receive a majority of votes at the election.

I conclude with a final observation. The poison pill provision, though included in the election ordinance and approved by a majority of the voters, was not itself part of the City's proposed "charter amendment" and was, the City concedes, "never intended to be included in the Charter permanently." Unlike the charter amendments approved as proposed in Proposition 1 and Proposition 2, the poison pill provision does not appear in the city charter. As the poison pill provision was never a "proposed amendment" to the charter, sections 9.004 and 9.005 do not apply to that provision as they apply to the charter amendments. This is true even if the poison pill provision was assumed by voters to have been submitted to them as part of the proposed "charter amendment." *See Zane-Cetti v. City of Fort Worth*, 269 S.W. 130, 133 (Tex. App.—Austin 1924), *aff'd*, 278 S.W. 183 (Tex. Comm'n App. 1925) (stating tax increase proposition was not "charter amendment" as contemplated by article XI, section 5, even though presented to voters as such).

The charter amendment contained in Proposition 2 either is effective or it is not. Applying the Local Government Code, it must be effective as law because it was adopted by majority vote and declared adopted by the City.[12] There can be no

---

[12] My colleagues in the majority construe my opinion as presuming that the charter amendments "must be given effectiveness" upon "adoption", and they commit extended discussion to that point. Maj. Op. at 14-15. A plain reading of my opinion reveals I engage no such presumption. To the extent my position was not clear, I direct the reader to the preceding paragraphs, *supra*, where I stated, "[t]he respective charter amendments proposed in Proposition 1 and Proposition 2 were adopted on November 2, 2004, and became 'effective' May 4, 2005, when the City declared by ordinance both propositions adopted", and where I stated that the charter amendment in Proposition 2 "must be effective as law because it was adopted by majority vote and declared adopted by the City." I recognize the statutory distinction between when a charter amendment is adopted (section 9.005(a)) and when it takes "effect" (section

other legal conclusion without violating state law. Once adopted, a charter amendment, having force of law under the Local Government Code, cannot be denied effectiveness by the type of municipal action attempted here. As the poison pill provision supporting the municipal act in question conflicts with state law, it cannot stand. I would therefore hold the poison pill provision violates section 9.005(a) because it purports to deny effectiveness to a charter amendment that was approved by a majority of voters and was adopted as law. For that reason, the poison pill provision runs afoul of article XI, section 5 of the Texas Constitution.

As it is unnecessary to do so in the context of this dissent, I express no opinion at this time on Hotze's arguments in his fourth issue that the City's budget ordinances for fiscal years 2011 through 2019 violate as a matter of law Article VI-a, Section 7 of the city charter.

/s/    Kevin Jewell
Justice

Panel consists of Justices Jewell, Zimmerer, and Hassan. (Hassan, J., majority)

---

9.005(b)). That distinction, however, has little bearing on this particular case because all agree that the charter amendments in both propositions were adopted and were declared adopted by the City. The City has thus attempted to deny effectiveness to a charter amendment that was adopted consistent with section 9.005(a) and declared adopted consistent with section 9.005(b). The charter amendment is therefore law, and the City may not rely on the poison pill provision to deny effectiveness to such an amendment.