**Affirmed as Modified and Opinion filed December 17, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00283-CV

---

### THE CITY OF ANAHUAC, Appellant

### V.

### C. WAYNE MORRIS, Appellee

---

**On Appeal from the 344th District Court**
**Chambers County, Texas**
**Trial Court Cause No. CV28119**

---

## O P I N I O N

In this appeal from a declaratory judgment, we are asked to consider two questions: (1) whether the trial court rendered an impermissible advisory opinion, and (2) whether the trial court erred by using the law of preemption to invalidate language from a city ordinance. We conclude that the trial court did not render an advisory opinion, as there is a justiciable controversy presented in the case. We further conclude that the trial court correctly applied the law of preemption, as the city ordinance directly conflicts with an act of the state legislature. Because the

declaratory judgment is too broad, however, we modify the trial court's judgment and affirm it as modified.

## BACKGROUND

The City of Anahuac adopted an ordinance that regulates the placement of both mobile homes and manufactured homes.[1] The full text of the ordinance provides as follows:

> It shall be unlawful to locate or relocate any mobile home or manufactured home that does not meet Zone 3 or better specifications within the city limits. It shall be unlawful for any person to locate or relocate any manufactured home or mobile home complying with Zone 3 or better specifications within the city limits unless he or she holds a valid permit issued by the city in the name of that person for the specific location or relocation proposed.

Anahuac, Tex., Code of Ordinances § 152.15 (2013). Although the reference to "Zone 3" is not defined in the City's code of ordinances, the parties agree that the reference pertains to the "Zone III" construction standards established by the federal government and adopted by the state for regulation of manufactured homes. These standards set the minimum requirements for manufactured homes situated in areas classified as being in Wind Zone III. *See* 24 C.F.R. § 3280.305 (2013).

In 2013, C. Wayne Morris transported a manufactured home into the City and placed it on his property without a permit, in violation of the City's ordinance. The City informed Morris of the violation and requested that he immediately cease all efforts to install the manufactured home. Morris sought the necessary permit, which the City initially indicated it would grant. However, the City later

---

[1] The terms "mobile home" and "manufactured home" generally refer to structures of the same type, except that a mobile home is a structure constructed before June 15, 1976, whereas a manufactured home is a structure constructed on or after that date. This distinction is codified in both the state and local authorities involved in this case. *See* Tex. Occ. Code § 1201.003 (2012); Anahuac, Tex., Code of Ordinances § 152.01 (2013).

determined that there were unspecified deficiencies, which Morris was unable to cure. Accordingly, the City did not issue Morris a permit.

Morris sued the City, seeking a declaration that the ordinance is preempted. Morris then moved for summary judgment. Although Morris cited to a federal act pertaining to manufactured homes, including a federal preemption provision, his motion proceeded primarily on the state law that implemented the federal act. Morris argued that the City could not demand that his manufactured home meet Zone III standards because the City was situated in Chambers County, which is designated under state law as being in Wind Zone II, rather than Wind Zone III. Morris also argued that even if the City could demand stricter standards, his manufactured home fell within the scope of a grandfather clause, and thus, the City could not enforce its ordinance against him.

In response, the City asserted that Morris had not demonstrated that there was a justiciable controversy because nothing in the record affirmatively established either the standard under which his manufactured home was constructed or the age of his manufactured home. The City also argued that the trial court should deny Morris's motion because the ordinance was a valid exercise of the City's police powers, and nothing in the state law prohibited the City from regulating the types of manufactured homes allowed within its limits.

The trial court ruled in favor of Morris and rendered a declaratory judgment that stated as follows: "It is therefore ordered and declared that the language 'Zone 3 or better specifications' of [the ordinance] is invalid, illegal, and unconstitutional." The City timely appealed.

## STANDING

In its first issue, the City argues that the trial court rendered an impermissible advisory opinion because no justiciable controversy was ever presented in the case. We understand the City's complaint to be that the trial court lacked subject-matter jurisdiction over Morris's suit because Morris did not establish his standing to challenge the City's ordinance. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (explaining that Texas courts lack the jurisdiction to issue advisory opinions, and that advisory opinions occur in cases brought by parties without standing).

Standing is a constitutional prerequisite to maintaining suit in either federal or state court. *See Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001). Generally, unless standing is conferred by statute, "a plaintiff must demonstrate that he or she possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury." *Id.* The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome. *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). The general test for standing requires (1) that there be a real controversy between the parties, and (2) that the controversy will actually be determined by the judicial declaration sought. *See Sneed v. Webre*, 465 S.W.3d 169, 180 (Tex. 2015). We review questions of standing de novo. *Id.*

The City contends that there is no evidence of the wind zone rating or age of Morris's manufactured home. Without such evidence, the City argues that there is no justiciable controversy that would authorize the trial court to invalidate the City's ordinance.

4

In the affidavit attached to his motion, Morris testified that his manufactured home was constructed in 1996. He also testified that the City denied his permit application because his manufactured home violated the ordinance. Although Morris did not affirmatively explain the nature of the violation, the only reasonable inference that can be made is that his manufactured home did not comply with the ordinance's requirement of meeting "Zone 3 or better specifications."

The City's refusal to issue a permit has resulted in a particular injury to Morris. Without the permit, Morris cannot complete the installation of his manufactured home. The City's enforcement of the ordinance has accordingly created a justiciable controversy, and Morris's suit seeks to resolve that controversy by asking whether the ordinance is enforceable. We conclude that Morris had standing to bring his suit and the trial court had subject-matter jurisdiction to render a non-advisory judgment that was binding on the parties. *Cf. Limon v. State*, 947 S.W.2d 620, 624 (Tex. App.—Austin 1997, no pet.) (bar owners had standing to challenge a bond requirement for obtaining a liquor license after a state commission denied their applications for failing to post the bond).

## PREEMPTION

In its second issue, the City argues that the trial court erred by granting Morris's declaratory judgment. The City contends that its ordinance is valid and that Morris failed to establish that the ordinance was preempted by state law.

We review declaratory judgments rendered by summary judgment under the same standards that govern summary judgments generally. *See Hourani v. Katzen*, 305 S.W.3d 239, 248 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). The trial court's grant of a summary judgment is reviewed de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). With a traditional motion for summary judgment, the movant has the initial burden of showing that

5

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Ins. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). Once the movant produces sufficient evidence conclusively establishing his right to summary judgment, the burden shifts to the nonmovant to present any issues or evidence that would preclude a summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). We consider all of the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

Morris's preemption argument relies on section 1201.256 of the Texas Occupations Code, and particularly subsection (c) of that statute, which provides as follows: "A manufactured home constructed before September 1, 1997, may be installed in a Wind Zone I or II county without restriction." Because he presented uncontroverted evidence that his manufactured home was constructed in 1996, Morris argues that this statute allows him to move his manufactured home into the City, which is located in a Wind Zone II county, regardless of the standards upon which the manufactured home was constructed.

The City disputes Morris's reading of the statute. Emphasizing the permissive understanding of the word "may," the City argues that the statute merely empowers a municipality to allow manufactured homes of a certain age and quality into its jurisdiction, if the municipality so desires. In its view, the City still has the authority to regulate manufactured homes covered by the statute if the regulation is a valid exercise of its police power.

We resolve questions of statutory interpretation de novo. *See F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007). Our

primary objective when interpreting a statute is to ascertain and give effect to the legislature's intent. *Id.* Where the statutory text is clear, we presume that the words chosen are the surest guide to legislative intent. *See Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010). Thus, we construe the statute according to its plain and common meaning, unless the legislature's contrary intention is apparent from the context or such a construction would lead to absurd results. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *CHCA W. Houston, L.P. v. Priester*, 324 S.W.3d 835, 838 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

The meaning of subsection (c) is best understood when examined alongside the subsections that immediately precede it. *See City of Austin v. Sw. Bell Telephone Co.*, 92 S.W.3d 434, 442 (Tex. 2002) (stating that statutory provisions should be considered in relation to the act as a whole, rather than in isolation). Subsections (a) through (c) of the statute provide as follows:

> (a) Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Orange, Refugio, San Patricio, and Willacy counties are in Wind Zone II. All other counties are in Wind Zone I.
>
> (b) To be installed in a Wind Zone II county, a manufactured home constructed on or after September 1, 1997, must meet the Wind Zone II standards adopted by the United States Department of Housing and Urban Development.
>
> (c) A manufactured home constructed before September 1, 1997, may be installed in a Wind Zone I or II county without restriction.

Tex. Occ. Code § 1201.256 (2012).

Under the plain language of these provisions, subsection (a) establishes which counties in Texas are designated as being in Wind Zone II, and subsections (b) and (c) regulate the types of manufactured homes that may be installed in such

7

counties. The regulations in the latter two subsections are divided according to the age of the manufactured home at issue. If the manufactured home was constructed on or after September 1, 1997, then it must meet the minimum standards of Wind Zone II to be installed in a Wind Zone II county. If, however, the manufactured home was constructed before September 1, 1997, then it can be installed in a Wind Zone II county "without restriction." To give effect to this difference between the two subsections, the phrase "without restriction" must be interpreted to mean that a manufactured home constructed before September 1, 1997, is not required to have been constructed according to a specific wind zone standard.

There is no textual support in the statute for the City's opposing argument that the City retains the power to prohibit any manufactured home on the basis of its construction standard, irrespective of age. Had the legislature intended to give the City such broad regulatory authority, it could have done so expressly, much like it has done in the case of mobile homes. In Section 1201.008, for instance, the legislature plainly provided: "A municipality may prohibit the installation of a mobile home for use as a dwelling in the municipality." The legislature did not give municipalities similar powers over manufactured homes, and we must presume that the different treatment was intended to be deliberate.

As a Type A general-law municipality, the City has the authority to adopt any ordinance "that is necessary for the government, interest, welfare, or good order of the municipality," provided that the ordinance is "not inconsistent with state law." *See* Tex. Loc. Gov't Code § 51.012 (2008). Here, the City's ordinance is inconsistent with Section 1201.256(c), which effectively functions as a grandfather clause. The City cannot, in harmony with that provision, prohibit the installation of all manufactured homes that fail to meet a certain construction standard when the legislature has already determined that manufactured homes of a

8

certain age, such as Morris's, may be installed in Chambers County without regard to their construction standard. *Cf. Scurlock v. City of Lynn Haven*, 858 F.2d 1521, 1525 (11th Cir. 1988) (city ordinance imposing a strict construction standard on manufactured homes was preempted by a federal law that imposed a less stringent standard).

The City nevertheless argues that its ordinance is entitled to a presumption of validity, which Morris has allegedly failed to overcome. The City bases this argument on three cases showing that a municipality may, pursuant to its police powers, impose regulations on manufactured homes that pertain to aesthetics and the preservation of property values. *See Schanzenbach v. Town of Opal*, 706 F.3d 1269, 1275 (10th Cir. 2013) (upholding city ordinance in Wyoming banning the installation of manufactured homes older than ten years at the time of the permit application); *Tex. Manufactured Hous. Ass'n v. City of Nederland*, 101 F.3d 1095, 1100 (5th Cir. 1996) (upholding city ordinance in Texas prohibiting the placement of "trailer coaches" on any city lot except in a "duly authorized trailer park"); *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 796 (Tex. 1982) (upholding city ordinances in Texas regulating mobile home parks and the use of mobile homes outside of a mobile home park). But in each of the three cases, the court determined that there was no conflict between the local ordinance and an applicable federal or state law.

Here, however, there is a direct conflict between the City's ordinance and Section 1201.256(c). Even if the ordinance were adopted to protect the aesthetics and property values of the community, the City's use of its police powers cannot supplant or take supremacy over a contrary act of the state legislature. *See, e.g., S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678–79 (Tex. 2013) (city ordinance prohibiting a concrete crushing facility within 1,500 feet of a

9

school was preempted by a state law setting the minimum distance at 1,320 feet); *see also City of Brookside Village*, 633 S.W.2d at 792, 796 (showing that whether an ordinance is a valid exercise of a municipality's police power is a separate question from whether the ordinance is preempted by state law).

We conclude that Morris carried his burden of showing that the City's ordinance is preempted as to his manufactured home. Because the City raised no issues or evidence that would defeat Morris's preemption theory, Morris is entitled to judgment as a matter of law.

The trial court's declaratory judgment is overbroad, however. Morris challenged the ordinance on the basis that he owned an older model manufactured home, which was covered by the grandfather clause in Section 1201.256(c). He did not argue that his manufactured home was constructed on or after September 1, 1997, and built according to Wind Zone II standards, which would implicate Section 1201.256(b). The declaratory judgment does not acknowledge this distinction. Because the issue in this case is whether the ordinance conflicts with Section 1201.256(c), the declaratory judgment is too broad and should be limited accordingly. Therefore, we modify the trial court's judgment to state that the City's ordinance is preempted and unenforceable as to a manufactured home constructed before September 1, 1997. *See* Tex. R. App. P. 43.2(b).

## CONCLUSION

The trial court's declaratory judgment is affirmed as so modified.

/s/    Tracy Christopher
Justice

Panel consists of Chief Justice Frost and Justices Christopher and Donovan.

10